692 So.2d 320 (1996)
Jody W. MANUEL, Stacey P. Foret, Burke G. Pierrotti and Wendell J. Manuel
v.
STATE of Louisiana; Honorable Edwin W. Edwards, Governor; Richard P. Ieyoub, Attorney General; J. William Pucheu, District Attorney; and Terry Pitre, Commissioner, Louisiana Office of Alcohol Beverage Control, Department of Revenue and Taxation.
No. 95-CA-2189.
Supreme Court of Louisiana.
March 8, 1996.
Opinion Dissenting from Original Opinion March 14, 1996.
Opinion Reversing Original Decision on Rehearing July 2, 1996.
Opinion Concurring with Rehearing Opinion July 12, 1996.
*321 Richard Phillip Ieyoub, Attorney General, E. Kay Kirkpatrick, Roy A. Mongrue, Jr., James Marshall Ross, Barbara B. Rutledge, James C. Hrdlicka, Thomas S. Halligan, Baton Rouge, for Applicant.
John L. Vidrine, Ville Platte, Camille F. Gravel, Jr., Alexandria, David Overlock Stewart, Brian S. Chilton, Washington, DC, for Respondent.
Henry M. Jasny, New York City, for Amicus Curiae Highway & Auto Safety and Mothers Against Drunk Drivers.
John Dowling Rawls, New Orleans, for Amicus Curiae Wedon A. Brown.
Justice Johnson filed Opinion Dissenting from Original Opinion March 14, 1996.
Chief Justice Calogero filed Opinion Concurring with Rehearing Opinion July 12, 1996.

ORIGINAL OPINION 95-2189 (La 3/8/96)
KIMBALL, Justice.[*]

THE ISSUE
La.R.S. 14:93.10 through La.R.S. 14:93.14, La.R.S. 26:90, and La.R.S. 26:286, all relative to prohibiting and providing sanctions for the purchase by, sale to, or purchase on behalf of, alcoholic beverages by persons under twenty-one years old were declared unconstitutional by a trial court under Art. I, Sec. 3 of the Louisiana Constitution of 1974. Pursuant to Art. V, Sec. 5(D) and La.R.S. 13:4431, the defendants brought this direct appeal to this court. After thoroughly reviewing the record evidence in this case, we affirm the trial court's declaration that the challenged statutes unconstitutionally discriminate on the basis of age, in violation of Art. I, Sec. 3 of the Louisiana Constitution of 1974.

FACTS AND PROCEDURAL HISTORY
On August 15, 1995, plaintiffs Jody W. Manuel and Stacey P. Foret, citizens of Louisiana under twenty-one years of age, and Burke G. Pierrotti and Wendell J. Manuel, retailers of alcoholic beverages, filed suit in Evangeline Parish requesting that enforcement of La.R.S. 14:93.10-93.14 and La.R.S. 26:90 and 26:286, which impose sanctions on persons under twenty-one years of age who purchase alcoholic beverages and on those who sell alcoholic beverages to persons under twenty-one years of age, be enjoined, and that the challenged statutes be declared unconstitutional as "age discrimination" prohibited by Article I, Section 3 of the Louisiana Constitution of 1974. The Attorney General of the State of Louisiana was named as a party defendant and properly served. On August 15, 1995, the trial court issued a temporary restraining order enjoining the enforcement of the challenged statutes pending a hearing on the rule for preliminary injunction.
On August 24, 1995, trial of the request for preliminary injunction was held and, following the presentation of testimony and exhibits, the trial court issued a preliminary injunction "declaring the age legislation unconstitutional, and prohibiting its enforcement throughout the State." Pursuant to La.R.S. 13:4431 and Art. V, Sec. 5(D)(1) of Louisiana Constitution of 1974, the State of Louisiana filed a Petition for Suspensive Appeal to this Court, which the trial court erroneously *322 refused to grant. The State then filed an application for a Supervisory Writ in this court, which we granted on August 24, 1995, docketing the application as an appeal and staying the execution of the trial court's preliminary injunction and declaration of unconstitutionality pending further orders of this court.[1]
On September 21, 1995, the parties entered into a stipulation, filed into the record, that the district court's judgment of August 24, 1995, be considered as that court's judgment on the permanent injunction, subject to the appeal already pending in this court. On October 20, 1995, the parties jointly moved in this court to add plaintiffs Christopher T. Nobles and Jessica A. Slutsky, both between the ages of eighteen and twenty-one, as the original plaintiffs Jody Manuel and Stacey Foret each achieved the age of twenty-one during the pendency of these proceedings.
The constitutionality of the challenged statutes, which make it illegal for persons eighteen to twenty years old to purchase or be sold alcoholic beverages is now squarely and properly before this court. After a thorough review of the law and the record herein, we affirm the trial court's declaration of unconstitutionality of the challenged statutes insofar as those statutes make it illegal for eighteen to twenty year olds to purchase or be sold alcoholic beverages.

HISTORY OF ACT 639 OF 1995
In 1986 the Louisiana Legislature passed Act 33 of 1986, which amended and reenacted La.R.S. 14:91.1 and La.R.S. 14:91.2, and enacted La.R.S. 14:91.5, raising the minimum drinking age from eighteen to twenty-one in Louisiana. Act 33 of 1986 was passed in response to the passage by Congress of 23 U.S.C. § 158, the National Minimum Drinking Age Act, which requires states to impose a minimum age of twenty-one for the purchase or public consumption of alcoholic beverages in order to remain eligible to receive full federal highway funding. Under 23 U.S.C. § 158, a state which fails to comply and raise its minimum drinking age to twenty-one has 5% of its federal highway funds withheld during the first year of non-compliance and 10% of such funds withheld in each succeeding year.[2] While Act 33 of 1986 raised the minimum drinking age in Louisiana to twenty-one by prohibiting the purchase or public possession of alcoholic beverages by persons under twenty-one, it contained no sanctions applicable to retailers or sellers of alcoholic beverages to such persons. Though this statutory scheme apparently satisfied the requirements of 23 U.S.C. § 158, as Louisiana has continued to receive full federal highway funding since March 15, 1987, the effective date of the Act, the omission of sanctions on retailers and sellers of alcoholic beverages rendered the statutes practically unenforceable, as only the underage purchasers, and not the sellers of alcoholic beverages could be punished.
In 1995, Act 639 of 1995 amended and reenacted La.R.S. 26:90(A)(1)(a) and (b) and La.R.S. 26:286(A)(1)(a) and (b), enacted La. R.S. 14:93.10 through La.R.S. 14:93.14, and repealed former La.R.S. 14:91.1 through La. R.S. 14:91.5. These changes produced statutes almost identical to those contained in Act 33 of 1986 insofar as the provisions relating to eighteen to twenty-one year old purchasers and possessors of alcoholic beverages were concerned, but added provisions imposing sanctions on retailers for selling alcoholic beverages to those between ages eighteen *323 and twenty-one.[3] Therefore, the changes made in Act 639 of 1995 effectively closed the "loophole" in Louisiana's drinking age law which had rendered it practically unenforceable.

LAW
Article I, Section 3 of the Louisiana Constitution of 1974 contains an equal protection, or "Individual Dignity" clause, unlike that of any other state's constitution or the United States Constitution. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985). La. Const. Art. I, Sec. 3, states:
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
La. Const. Art. I, Sec. 3 (1974) (emphasis added).
In Sibley, this court recognized and discussed the unique language of Art. I, Sec. 3 which evidenced an intent to expand the scope of protection provided by the guarantee of equal protection under our constitution beyond that provided by the Fourteenth Amendment. Because of the clear differences between that section and the Fourteenth Amendment's equal protection clause, which simply states "No State shall ... deny to any person within its jurisdiction the equal protection of the laws," this court rejected the federal approach for analysis of equal protection claims as an inappropriate model for equal protection analysis under the Louisiana Constitution. Sibley, 477 So.2d at 1105-08. In rejecting the federal approach, this court noted "[w]ith the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment," Id. at 1108, and held that the adoption of Article I, Section 3:
... commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Sibley, 477 So.2d at 1107-08 (emphasis added, notes omitted). This court went on to explain that when a statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, "the state is assigned the burden of justifying such a classification by showing that it substantially furthers an appropriate state purpose." Id. at 1108 (emphasis added).
More recently, in Pace v. State, Through Louisiana Employees Retirement System, 94-1027 (La. 1/17/95), 648 So.2d 1302, this court explained:
... Article I, § 3 designates certain types of legislative classifications that cannot be used to arbitrarily, capriciously, or unreasonably discriminate against a person. When a statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, it is presumed to deny the equal protection of the laws and to be unconstitutional *324 unless the state or other advocate of the classification shows that the classification substantially furthers an important governmental objective. This intermediate type of analysis was not fully articulated in this court's interpretation of Article I, § 3 until its decision in Sibley, supra. Nevertheless, all of this court's decisions that have carefully examined such legislative classifications of persons are consistent with this form of intermediate review.
* * * * * *
The United States Supreme Court uses a similar intermediate standard of review in analyzing legislative classifications challenged as denying the equal protection of the laws.
Pace, 94-1027 at 3-5, 648 So.2d at 1305-06 (emphasis added, citations omitted).
In determining whether the State has met its burden of showing a classification based on any of the attributes listed in the third sentence of Art. I, Sec. 3 is not arbitrary, capricious, or unreasonable because it "substantially furthers an important governmental objective," Louisiana courts examine several factors, including: (1) whether each interest asserted by the state is actually implicated by the classifications employed in the statutory scheme; (2) whether there are reasonable non-discriminatory alternatives to the challenged statutory scheme by which the state's asserted interest and objectives might be satisfied; and (3) whether the discriminatory classifications contained in the challenged statutory scheme undercut any other countervailing state interests. Pace, 94-1027 at 11-14, 648 So.2d at 1309-10.
The requirement that a proponent of a law which classifies persons on the basis of age must prove the challenged classification is not arbitrary, capricious or unreasonable by showing the classification substantially furthers an important State objective is compelled by the straightforward language and structure of Art. I, Sec. 3 and, as we noted in Sibley, clearly reflects the intent of the drafters of the Louisiana Constitution of 1974. Sibley, 477 So.2d at 1105-08. Requiring that the proponent of such a law need only show the law has any governmental justification, however remote or attenuated, would write out of the constitution the specific protections carefully considered and included in Art. I, Sec. 3, and would reduce the protection afforded enumerated classes to the same level as every other unlisted classification which the State might make among persons. This, of course, would render superfluous the drafters' explicit listing of these specific classes and would clearly conflict with both the express language of Art. I, Sec. 3 and the intent of the drafters of the Louisiana Constitution of 1974. See Katherine Shaw Spaht, et al., The New Forced Heirship Legislation: A Regrettable "Revolution," 50 La.L.Rev. 409, 422-429 (1990), and sources cited therein; John Devlin, Louisiana Constitutional Law, 51 La.L.Rev. 295, 306-12 (1991).

DISCUSSION
Since the adoption of the Louisiana Constitution of 1974, this court has not had occasion to address the constitutionality of a law which discriminates on the basis of age. We hold today, as explained infra, that in the context of a law which singles out a particular age group of adults for treatment different under the law from other adults, the classification can only be found constitutional if it is the classification which most directly implicates or furthers the asserted governmental interest. In other words, if the evidence shows there are other age groups which would better further the State's asserted interest, then the classification chosen is inherently arbitrary, capricious and unreasonable where there are no other asserted State interests which would justify choosing the challenged classification over the group which better furthers the asserted State interest. We further hold the State's eligibility to obtain or to continue to receive federal funding is not, by itself, a legitimate state interest sufficient to abridge the constitutionally protected rights of classes of persons specifically protected in Art. I, Sec. 3 of the Louisiana Constitution of 1974.

Burden of Proof
The challenged statutes classify persons on the basis of age by prohibiting the sale or purchase of alcoholic beverages to or by persons eighteen to twenty years old. Due to *325 Louisiana's unique constitutional equal protection clause, the challenged statutes, which classify persons on the basis of age, are presumed unconstitutional. Pace, 94-1027 at 4, 648 So.2d at 1305. The State therefore bears the burden of overcoming this presumption by proving the classifications substantially further an important governmental objective. Id. To meet this challenge, the State has advanced two governmental objectives which it alleges are important and are substantially furthered by the classifications contained in the challenged statutes: (1) the State's need for continued receipt of its full share of federal highway funds under the National Minimum Drinking Age Act; and (2) highway safety. We will consider the State's stated objectives in inverse order.

Highway Safety
As its "important governmental objective" justifying the challenged statutes' classification of persons on the basis of age, the State argues prohibiting the purchase and sale of alcoholic beverages to those between eighteen and twenty-one years old will improve highway safety, reduce the incidence of driving while intoxicated ("DWI") among persons in that age group, and reduce the number of injury and fatality automobile accidents in that age group.
Before discussing the evidence introduced by the State in support of its highway safety justification, however, it is first necessary to explain why the only potentially legitimate justification offered by the State is the improvement of highway safety in general. As previously noted, the State argues that prohibiting the purchase by and sale to eighteen to twenty year olds of alcoholic beverages will improve highway safety, reduce the incidence of driving while intoxicated among persons in that age group, and reduce the number of injury and fatality automobile accidents in that age group. Arguing that reducing the incidence of driving while intoxicated of eighteen to twenty year olds and reducing the number of injury and fatality accidents involving eighteen to twenty year olds are important governmental objectives which are substantially furthered by prohibiting the purchase or sale of alcohol by or to that very group, however, is both circular and illegitimate. First, targeting a specific group of adults for reduction of DWI's and alcohol related accidents in that group begs the question of whether there is a legitimate reason which is not arbitrary, capricious, or unreasonable for so classifying or targeting that group in the first place. Second, as the statistics submitted by both sides show, every age group of licensed drivers has some incidence of driving while intoxicated and some number of alcohol related fatality and injury accidents. Obviously, prohibiting the purchase or sale of alcohol by or to any specific age group will lead to a reduction of the incidence of driving while intoxicated and the number of alcohol related accidents in that age group. This, however, does not in any way explain or justify the initial selection of that group for discriminatory classification and treatment. Finally, the reasoning in support of these particular objectives is circular. In the challenged statutes, the State classifies the target group solely on the basis of age, then attempts to justify the classification by showing the benefits which will accrue to that age group by so classifying them and by claiming that that classification substantially furthers an important governmental objective, which is to reduce the incidence of DWI's and alcohol related accidents among that age group. The legitimacy of this classification, however, is exactly what is at issue. Under this line of reasoning, there would be no reason why the State could not choose any age group and justify prohibiting the purchase or sale of alcoholic beverages to that age group by simply asserting that the law will reduce DWI's and alcohol related accidents for that group. Because these purported governmental objectives are invalid, there is only one remaining legitimate important governmental objective which the State can argue is substantially furthered by the age classification contained in the challenged statutes: highway safety in general.
As previously stated, in determining whether the State has carried its burden of proving the presumptively unconstitutional age classification contained in the challenged statutes is not arbitrary, capricious, or unreasonable because it substantially furthers the important governmental objective of highway *326 safety, we will examine the record in the instant case for evidence as to the following factors: whether the State's objective of highway safety is directly implicated by the age classification; whether there are any reasonable non-discriminatory alternatives to the age classification by which the State could satisfy its objective; whether and, if so, the extent to which the challenged age classification undercuts any countervailing state interests. Pace, 94-1027 at 11-14, 648 So.2d at 1309-10. Furthermore, because the instant case involves discrimination against a particular age group, we also examine the record to determine whether the age group contained in the challenged statutes will produce the largest improvement in highway safety, i.e., to determine whether eighteen to twenty year olds are responsible for the greatest number of alcohol related accidents and/or DWI's. This is so because, as previously noted, a prohibition on the purchase and sale of alcohol by or to any specific age group will necessarily lead to some improvement in highway safety. Therefore, unless the evidence justifies the State's designation of the particular age group at issue for discriminatory treatment by showing that that group is the group most responsible for the problem addressed in the statutes, the State would be free to select any age group for such discriminatory treatment. Finally, we examine the record to determine whether the eighteen to twenty year old age group is the group responsible for the greatest number of these types of accidents in Louisiana, as the State's objective is to improve highway safety in Louisiana, and Louisiana is the only place in which the State's discriminatory classification will have effect. With these precepts in mind, we now turn to an examination of the evidence presented.
The State introduced affidavits from James Hedlund, Acting Associate Administrator for Traffic Safety Programs, and Director of the Office of Alcohol and State Programs, NHTSA, and Bette Theis, Executive Director for the Louisiana Highway Safety Commission, each of which contained exhibits in the form of statistical studies of alcohol involved accidents, as well as testimony from Capt. Ronald B. Jones, Commander of Troop A of the Louisiana State Police, who was qualified as an expert in traffic enforcement and policy development, and Dr. Richard Scribner, an expert in public health, who also relied on a 1987 Governmental Accounting Office study evaluating other statistical studies of alcohol involved accidents. A review of this evidence shows the following.
Mr. Hedlund's affidavit, relying on statistical data obtained by NHTSA through their Fatal Accident Reporting System ("FARS") and from reports studying age twenty-one drinking law effectiveness, asserts that age-21 drinking laws have been proven to save lives and that FARS data and the studies show an over-involvement of eighteen to twenty year olds in alcohol related crashes. He states FARS data and the studies show that: (1) in 1994, 44% of eighteen to twenty year old traffic fatalities were alcohol related, as compared to 40.8% for all traffic fatalities; (2) alcohol related traffic fatality rates, on a per capita basis, are over twice as great for eighteen to twenty year olds as for the population over twenty one; (3) in 1994, more eighteen to twenty year olds died in low blood alcohol level (.01 to .09) traffic accidents than any other three year age group; and (4) in 1994, Louisiana had the fourth highest percentage of alcohol related traffic fatalities of fifteen to twenty year olds of all States. Mr. Hedlund's affidavit also refers to: (1) a Governmental Accounting Office ("GAO") report to Congress, "Drinking Age LawsAn Evaluation Synthesis of Their Impact On Highway Safety, March 1987," which concludes on the basis of the report's review of fourteen leading traffic accident studies that raising the drinking age has a direct effect on reducing alcohol related traffic accidents among youth affected by such laws; (2) a 1989 NHTSA study, "The Impact of Minimum Drinking Age Laws On Fatal Crash Involvements: An Update of NHTSA Analyses," which estimates minimum drinking age laws have been responsible for a 12% reduction in fatal crash involvements of drivers affected by such laws; and (3) NHTSA's 1994 estimates that minimum drinking age laws have reduced traffic fatalities involving eighteen to twenty year olds by 13% and saved an estimated 14,816 lives nationwide since 1975.
*327 Ms. Theis, relying on the Louisiana Highway Safety Commission 1993 Traffic Records Data Report and the NHTSA FARS 1994 Data Summary Report, states that Louisiana data for 1993 shows alcohol involved fatalities of young drivers increases significantly at age seventeen, peaks at age twenty, and begins to decline between ages twenty two and twenty four. Ms. Theis further states that though eighteen to twenty year old drivers represented 5% of the licensed drivers in Louisiana in 1993, they were involved in 10% of the alcohol and fatal injury accidents.
Capt. Jones, Commander of Troop A of the Louisiana State Police, testified that based on his personal experience, the challenged statutes could be "the most critical and fundamental improvement in traffic safety when it comes to alcohol in this state." He further testified that in his opinion, access to and use of alcohol by eighteen to twenty year olds had a detrimental effect on highway safety because that age group "is not only inexperienced at driving but is also inexperienced at drinking."
Finally, Dr. Scribner, qualified by the State as an expert in public health, testified that in his opinion, alcohol is the leading cause of death among eighteen to twenty year olds. He testified that by this he meant that although the three leading causes of death among eighteen to twenty year olds are accidents, homicide, and suicide, alcohol plays a part in a significant number of deaths attributed to these causes. On the basis of a 1987 GAO Report, see supra at 10, Dr. Scribner further testified that raising the drinking age decreases alcohol related fatal and injury accidents, and that the younger the driver, the greater the over-representation in alcohol involved auto accidents. On the basis of the GAO Report, he estimated that enforcement of the challenged Act would result in a 5%-28% decrease in alcohol involved fatal injury crashes in Louisiana.
The trial court found, as a matter of fact, that the state's interest in highway safety is not substantially furthered by the challenged classification because, at least in Louisiana, eighteen to twenty year olds are neither arrested in greater numbers than other age groups for driving while intoxicated nor, according to the State's own data compilations,[4] involved in or responsible for a greater number of alcohol related injury and fatality producing accidents. After thoroughly reviewing all of the record evidence, we find the trial court's conclusion was not clearly wrong or manifestly erroneous. Instead, our review of the evidence reveals the State's own statistics clearly show that, in Louisiana, persons between the ages of twenty-one and twenty-three are involved in significantly higher numbers of alcohol related injury and fatality accidents than eighteen to twenty year olds. Indeed, certain statistical evidence showed eighteen to twenty year olds are not even the group second most responsible for alcohol related accidents. Nor are eighteen to twenty year olds the group with the highest incidence of DWI arrests or convictions. As such, prohibiting the purchase by or sale to eighteen to twenty year olds of alcoholic beverages does not prohibit the age group most responsible for alcohol related accidents on the State's highways from the purchase or public possession of alcoholic beverages.
The Louisiana Traffic Data Report for 1986 shows the eighteen to twenty year old age group had a total of 854 accidents involving alcohol, injury and/or death in 1986. By comparison, the report shows that the twenty-one to twenty-three year old age group had a total of 924 such accidents, the twenty-two to twenty-four year old age group had 916 such accidents, the twenty-three to twenty-five year old age group had 877 such accidents, and the twenty-four to twenty-six year old age group had 837 such accidents. In sum, the report shows that in Louisiana in 1986, every three year age group, up to and including the twenty-three to twenty-five year old group, was involved in more alcohol related accidents than the eighteen to twenty year old age group.
The Louisiana Traffic Data Report for 1992 shows there were 337 alcohol related fatal and injury accidents in 1992 involving *328 persons fifteen to twenty years old. By comparison, the report shows that there were 402 such accidents involving persons twenty-one to twenty-four years old, and 479 such accidents involving persons twenty-five to twenty-nine years old. Consistent with the 1986 report, the 1992 report shows that in Louisiana, persons twenty-one to twenty-four years old were responsible for more alcohol related injury and fatality accidents than persons eighteen to twenty years old.[5]
An affidavit by Mary Jane Marcantel, a paralegal employed by plaintiffs to perform statistical research, states that she personally searched the records of the Clerk of Court's Office for the Parish of Evangeline in Ville Platte, Louisiana, and the booking records of the Sheriff's Office for Evangeline Parish, for the calendar year 1986 and the period of January 1, 1994 through July 28, 1995, to ascertain the number of persons charged with DWI during the time periods listed and the age of those persons at the time of their arrests. Ms. Marcantel's affidavit states her research showed of the 92 DWI arrests in Evangeline Parish in 1986, nine were of persons eighteen to twenty years old. By comparison, her research showed there were thirteen persons twenty-one to twenty-three years old and twelve persons twenty-four to twenty-six years old arrested for DWI in Evangeline Parish during the same time period. Ms. Marcantel's affidavit further states that of the 179 DWI arrests in Evangeline Parish during the January 1, 1994 to July 28, 1995, time frame, ten were of persons eighteen to twenty years old. By comparison, her affidavit states her research showed there were sixteen persons twenty-one to twenty-three years old and twenty-five persons twenty-four to twenty-six years old arrested for DWI in Evangeline Parish during the same time period. In sum, Ms. Marcantel's research shows that fewer eighteen to twenty year olds were arrested for DWI in Evangeline Parish in either time period examined than either twenty-one to twenty-three or twenty-four to twenty-six year olds.[6]
The affidavit of Joseph W. Demourelle, Chief of Detectives of the Evangeline Parish Sheriff's Office, was also introduced by plaintiffs. Detective Demourelle states he researched and reviewed the criminal arrest and probation records of Evangeline Parish for the period of January 1, 1995 to July 31, 1995, to ascertain the number of DWI convictions in Evangeline Parish during that time period and the age of the persons convicted. Detective Demourelle states that his research shows that of the 79 DWI convictions in Evangeline Parish during that time period, only one was of a person under twenty-one years old.
The affidavit of Dr. Robert Gramling, a Professor of Sociology at the University of Southwestern Louisiana, was also introduced by plaintiffs. Dr. Gramling's affidavit states that his research, consisting of studies done in 1986 and 1992 comparing drinking habits of young adults in Louisiana and North Carolina, reveals there is a lack of empirical evidence to support the assumption that raising the drinking age to twenty-one years old will result in less alcohol consumption by *329 eighteen to twenty year olds. Dr. Gramling's affidavit further states his research strongly suggests that greater quantities of alcohol may be consumed by eighteen to twenty year olds where the drinking age is raised to twenty-one. Finally, Dr. Gramling concludes raising the legal drinking age in 1986 did not significantly change the alcohol consumption of eighteen to twenty year olds in Louisiana.
Furthermore, on cross-examination by plaintiffs, Dr. Scribner admitted his research has also shown that peak alcohol consumption among young people occurs in their twenties, and not in their late teens. Dr. Scribner testified that peak alcohol consumption occurs at ages twenty to twenty-four, and that drivers through age thirty are over-represented in alcohol related injury and fatality accidents. Dr. Scribner also agreed that the risk to others on the highways, i.e., the public at large as opposed to alcohol impaired drivers, of alcohol related accidents is greater with drivers in the twenty-one to twenty four year old age group, because not only are they over-represented in alcohol related accidents, there are numerically more licensed drivers in that age group. Finally, Dr. Scribner agreed on cross-examination that the rate of alcohol related deaths, regardless of the attributed cause of death, i.e., accidents, homicide, suicide, was consistent among all age groups up to and including persons fifty-four years old, in that alcohol related violent deaths consistently accounted for 47-48% of all violent deaths among every age group up to fifty-four years old.
On the other hand, the statistical evidence presented by the State, as reviewed earlier, primarily consists of national statistical data on alcohol related fatal and injury accidents. This data, sufficient to provide Congress with justification for enacting the National Minimum Drinking Age Act under its Commerce Clause powers, see South Dakota v. Dole, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), is not sufficient to carry the State's burden in the instant case in light of the Louisiana statistical evidence introduced by plaintiffs showing that eighteen to twenty year olds are not the group responsible for the greatest number of alcohol related accidents in Louisiana. The relevant inquiry in this case is whether eighteen to twenty year olds are the age group responsible for the greatest number of alcohol related accidents in Louisiana. The statistical evidence presented by plaintiffs, primarily consisting of the State's own data compilations, clearly shows that twenty-one to twenty-four year olds are responsible for far more alcohol related accidents in Louisiana than eighteen to twenty year olds.
Furthermore, the national data introduced by the State merely shows that eighteen to twenty year olds are "over-represented" to a greater degree than other age groups in alcohol related accidents,[7] not that eighteen to twenty year olds are the group involved in the highest number of alcohol related accidents. Such a showing is not relevant in the instant case, however, as prohibiting an age group because they are over-represented in alcohol related accidents to a greater degree than other age groups will not decrease the number of actual traffic accidents and concomitantly increase highway safety nearly as much as would prohibiting the age group responsible for the greater number of accidents from purchasing or publicly consuming alcohol. While the State also introduced evidence to show that, given the relative number of licensed drivers in each age group, eighteen to twenty year olds are over-represented to a greater degree than twenty-one to twenty-four year olds in such accidents in Louisiana as well, this, as Dr. Scribner admitted and as we have previously explained, is not the proper measure of whether the Act substantially furthers the State's objective of increased highway safety.
*330 In sum, the record evidence in the instant case shows that in Louisiana, eighteen to twenty year olds are not the group responsible for the greatest number of alcohol related accidents. The evidence as to this factor therefore points toward the unconstitutional nature of the challenged age discrimination, as the State's objective of increased highway safety is neither directly implicated nor substantially furthered by the discriminatory classification of eighteen to twenty year olds contained in the challenged statutes.[8]
The trial court also found that there are several non-discriminatory alternatives available to address the state's highway safety concerns. Our review of the record evidence reveals no error in the trial court's finding. In this regard, though Capt. Jones, a state witness, testified he believed a minimum drinking age law set at twenty-one years of age could "be the most critical and fundamental improvement in traffic safety when it comes to alcohol in this state," he later acknowledged on cross-examination by plaintiffs that a law prohibiting persons twenty-one to twenty-three years old would also save lives, and that the twenty-one to twenty-three year old age group also has a very high rate of alcohol related accidents. Capt. Jones further admitted activities such as school educational programs, public advertising, education and training of retailers of alcohol, improved highway designs, and tougher DWI laws are all important and effective methods of combatting drinking and driving and improving highway safety. Of course, absolute prohibition of all alcohol sales in the State of Louisiana would also achieve the State's objective of increased highway safety without discriminating against persons eighteen to twenty years old. The record evidence in this case as to this factor therefore also points toward the unconstitutional nature of the challenged age discrimination, as reasonable non-discriminatory alternatives to the classifications contained in the challenged statutes by which the State could achieve its objective of increased highway safety exist.
Finally, we agree with the trial court's finding that the classification contained in the challenged statutes undercuts countervailing interests of the State. Our Civil Code accords majority status to persons upon reaching the age of eighteen. La.C.C. art. 29. Consistent with that Article, our constitution, in Art. I, Sec. 10, accords that most fundamental of rights in a democratic society, the right to vote, to citizens upon their reaching the same age, eighteen.[9] Upon attaining the age of eighteen, persons are treated as adults under the law, and are accordingly assigned the responsibilities and obligations of an adult under the law.[10] The challenged *331 statutes, however, in derogation of the general principle contained in La.C.C. art. 29, create a situation where eighteen to twenty year olds are accorded the responsibilities and obligations of an adult under the law, but are treated as though they are still children when it comes to the purchase and public consumption of alcoholic beverages.[11] Such discrimination against these otherwise similarly situated adults clearly undercuts the State's consistently expressed countervailing interest in according eighteen to twenty year olds "adult" or "major" status. Furthermore, the State's proclamation that eighteen to twenty year olds need special regulation of their alcohol consumption, despite the factual evidence to the contrary showing that eighteen to twenty year olds are involved in less alcohol related accidents than certain other age groups, undercuts the State's countervailing interest in addressing the broader problem of alcohol impaired driving on the highways of Louisiana. By targeting only eighteen to twenty year olds, the State is failing to address this problem. Therefore, once again, the record evidence in this case points toward the unconstitutional nature of the challenged age discrimination, as the classification contained in the challenged statutes undercuts countervailing state interests.
Our review of the record in this case shows the factual findings of the trial court in this case are well supported by record evidence and are not clearly wrong or manifestly erroneous. The trial court's declaration of unconstitutionality of the challenged statutes on the basis of those factual findings is also correct. When properly evaluated in light of the unique protection against age discrimination afforded persons under Article I, Sec. 3, of the Louisiana Constitution of 1974, the State has clearly failed in the instant case to carry its burden of proving this presumptively unconstitutional classification on the basis of age substantially furthers the important governmental objective of improving highway safety.[12] The evidence before us fails to show that eighteen to twenty year olds are the group most responsible for alcohol related accidents in Louisiana. As such, the State's objective of improved highway safety is not directly implicated by the discriminatory classification contained in the *332 challenged statutes.[13] Furthermore, the evidence shows there are reasonable, non-discriminatory alternatives available to the State which would substantially further the governmental objective of increased highway safety, and there are significant, countervailing State interests which are undercut by this discriminatory classification. As the United States Supreme Court stated when presented with a somewhat similar case involving a law requiring gender discrimination in the purchase of alcoholic beverages, "[i]n sum, the principles embodied in the Equal Protection Clause are not to be rendered inapplicable by statistically measured but loose-fitting generalities concerning the drinking tendencies of aggregate groups." Craig v. Boren, 429 U.S. 190, 208-09, 97 S.Ct. 451, 463, 50 L.Ed.2d 397 (1976).

Loss of Highway Funds
As an alternative justification for the challenged statutes' classification of persons on the basis of age, the State asserts that a declaration of unconstitutionality of the challenged statutes in this case will result in Louisiana having no law fixing the minimum drinking age at twenty-and will cause the State to fall out of compliance with 23 U.S.C.§ 158, the National Minimum Drinking Age Act. Non-compliance, the State alleges, will cost Louisiana millions of dollars in federal highway funding. At trial, the State introduced affidavits from John Womack, acting Assistant Chief Counsel of the National Highway Traffic Safety Administration ("NHTSA"), the federal agency in charge of determining state compliance with 23 U.S.C.§ 158, and Sharon Lyles, Deputy General Counsel for the Louisiana Department of Transportation and Development, to support this allegation. Mr. Womack's affidavit indicates that the lack of an age twenty-one drinking requirement will result in the loss of an estimated $14.7 million in 1996, while Ms. Lyles' affidavit indicates the state would lose $8,979,400.00 in the first year of non-compliance and $18 million per year every year thereafter. The State argues that few "important governmental objectives" are more important than balancing the State's budget through the continued receipt of millions of dollars in federal funds which are not otherwise available.
Though the trial court failed to specifically address in his reasons for judgment the State's asserted interest in the receipt of federal highway funds, our review of the record shows the trial court was presented with argument and evidence on the issue by both the State and plaintiffs, and that he subsequently considered and rejected the State's argument. After careful consideration, we must agree with the trial judge.
Although the State's objective of continued receipt of its full share of federal highway funds is an understandable and desirable goal, it is, nevertheless, not legitimate in the context of the instant case. Simply stated, where there is no other governmental interest which justifies the discrimination, the State's inability to obtain certain discretionary federal funds cannot suffice as a legitimate reason for the presumptively unconstitutional discrimination.
One of, if not the most important governmental objectives of the State is the securing and protection of the rights of its citizens which are enumerated in the constitution of the State of Louisiana. See Art. I, Sec. 1, Louisiana Constitution of 1974. One of those enumerated rights is the right to live free from arbitrary, capricious, or unreasonable discrimination by the state on the basis of age. Art. I, Sec. 3, Louisiana Constitution of 1974. We have already determined herein there is no basis in fact for the designation of eighteen to twenty year olds as the only group of adults in Louisiana as to which the sale or purchase of alcoholic beverages can be prohibited. In the face of this finding, the State's desire to maintain a certain level of federal highway funding at the expense of the abridgment of certain citizens' constitutional *333 rights cannot be countenanced.[14] As the United States Supreme Court has stated, "it is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them." Watson v. Memphis, 373 U.S. 526, 537, 83 S.Ct. 1314, 1321, 10 L.Ed.2d 529 (1963).
Furthermore, even if this court were willing to entertain the proposition that a straightforward "sale" of its citizens' constitutional rights could possibly be upheld under some particular set of circumstances, examination of other relevant factors in this case, i.e., whether reasonable non-discriminatory alternatives by which the State's objective could be satisfied exist and whether the discriminatory classifications contained in the challenged statutes undercut any countervailing State interests, also point toward the unconstitutional nature of the challenged age classification. First, in the instant case non-discriminatory alternatives are available to the State to maintain its eligibility to continue to receive full federal highway funding. For instance, the State has the power to impose an absolute prohibition on the purchase, sale or possession of alcoholic beverages by persons of all ages. This, of course, would maintain the State's ability to receive full federal funding without discriminating against any particular protected class of persons. Further, raising the age of majority in the State of Louisiana to twenty-one would also accomplish the State's objective without discrimination, as persons under twenty-one would then be minors, not adults, as a matter of law. While neither of these examples may be politically desirable or palatable to the State, they are nevertheless reasonable in light of our constitutional prohibition against arbitrary, capricious or unreasonable discrimination on the basis of age.
Second, as we previously explained, our Civil Code accords majority status to persons upon reaching the age of eighteen. Upon attaining the age of eighteen in Louisiana, persons are treated as adults under the law for all purposes, and are accordingly assigned the responsibilities and obligations of an adult under the law. The discriminatory classification contained in these statutes to acquire federal funds clearly undercuts the State's consistently expressed countervailing interest in according eighteen to twenty year olds "adult" or "major" status.
We therefore hold the trial court was correct in rejecting the State's continued receipt of its full share of federal highway funds as sufficient reason to discriminate against otherwise similarly situated adults solely on the basis of their age. When measured against the constitutional presumption against discrimination on the basis of age, the availability of non-discriminatory alternatives, and the State's countervailing interest in having its young adults act responsibly in accordance with their legal status as majors for all purposes under Louisiana law, discrimination by the State solely on the basis of age for the purpose of continued receipt of its full share of federal highway funds is not only discrimination in furtherance of an illegitimate governmental purpose, but is arbitrary, capricious, and unreasonable discrimination under Art. I, Sec. 3.[15]

CONCLUSION
The trial court correctly held the State failed to overcome the presumption of unconstitutionality accorded the age classification *334 contained in the challenged statutes and failed to carry its burden of showing the statutes' discriminatory classification of eighteen to twenty year olds substantially furthers an important governmental objective. We therefore affirm the trial court's declaration that La.R.S. 14:93.10 through La.R.S. 14:93.14, La.R.S. 26:90 and La.R.S. 26:286, insofar as they prohibit the sale to, purchase by, or purchase on behalf of, alcoholic beverages to persons eighteen to twenty years old, violate the prohibition against discriminatory classification of persons on the basis of age contained in Article I, Section 3 of the Louisiana Constitution of 1974.
AFFIRMED.
LEMMON, JOHNSON, and VICTORY, JJ., dissent and assign reasons.
LEMMON, Justice, Dissenting.
I dissent for the reasons assigned by Justice Victory and for the following additional reasons.
The standard for determining the constitutionality of a statute that sets up a classification on any basis not enumerated in Section 3 is whether the classification under the presumptively constitutional statute furthers any legitimate governmental interest, and the opponent has the burden of proof. On the other hand, the standard for determining the constitutionality of a classification based on age is stated expressly in La. Const. art. I, § 3the classification cannot "arbitrarily, capriciously or unreasonably discriminate." Because "age" discrimination is specifically enumerated in Section 3 and because an age classification must have a non-arbitrary basis, the burden of proof is on the proponent of constitutionality to show that the statute setting up such a classification substantially furthers a legitimate governmental interest.
The principal difference in the standards is in the placement of the burden of proof, although a classification on a basis enumerated in Section 3 requires that the legitimate governmental interest be a substantial reason for the classification rather than merely an incidental consideration.
The statute at issue in this case is a minimum drinking age statute. The issue is whether establishing the minimum drinking age at an age higher than the age of majority substantially furthers the legitimate governmental interest of promoting highway safety. The pertinent inquiry is made by comparing the category composed of persons from eighteen to twenty years of age with the category composed of persons twenty-one years of age and older. The majority errs in comparing the eighteen-to-twenty age group with numerous other three-year age groups for the purpose of determining the legislative arbitrariness in fixing the minimum drinking age at twenty-one. The focus should be on the reasonableness of the Legislature's drawing the line at the specific age higher than eighteen, and the State has the burden of proof.
The State introduced national statistics showing an overrepresentation of the age group classified under the Louisiana statutes in alcohol-related highway injuries and state statistics showing that the group represents five percent of all licensed drivers, but are involved in ten percent of all alcohol-related accidents. A National Highway Transportation Safety Administration study estimated that highway fatalities have been reduced by twelve percent because of the minimum drinking age laws. Louisiana can certainly use these and the other national and state statistics and reports, which were undertaken for the specific purpose of evaluating this minimum drinking age, as a non-arbitrary basis for establishing a reasonable minimum drinking age in this state, rather than reverting back to the lowest minimum drinking age in the nation.
I have difficulty in finding arbitrary a classification establishing a minimum drinking age that every other state has established in order to substantially further the legitimate governmental objective of promoting highway safety. Moreover, there is undeniable logic in the theory that prohibiting drinking by younger drivers who are inexperienced both at driving and at drinking would surely promote highway safety.
While I conclude that the State proved furtherance of a legitimate government interest in establishing the minimum drinking age at twenty-one, I have a great deal of problems *335 with the numerous and arguably illogical exceptions that allow persons under twenty-one to possess and consume alcoholic beverages. However, because the majority pretermitted this problem, I merely dissent from the decision on the basis set forth by the majority and reserve judgment on the problem with the exceptions.
VICTORY, Justice, dissenting.
Article 1, Section 3, of the 1974 Louisiana Constitution allows laws to discriminate against persons because of their age, so long as the law does not "arbitrarily, capriciously, or unreasonably discriminate." Sibley correctly interpreted this language to mean that the classification had to have a "reasonable basis." Sibley first explained that this burden is met by showing that the classification reasonably furthers a legitimate state purpose. Sibley, at 1108. However, within one paragraph, the test was expanded to "substantially furthers an appropriate state purpose." Sibley, at 1108. In early 1995, this Court in Pace again expanded the requirement by holding that the classification must "substantially further[] an important governmental objective." 648 So.2d at 1305.
The majority in the instant case, citing Pace, has again expanded the test, stating that Louisiana courts examine several factors, including whether: (1) each interest asserted by the state is actually implicated by the classifications employed in the statutory scheme; (2) there are no reasonable nondiscriminatory alternatives to the challenged statutory scheme by which the state's asserted interests and objectives might be satisfied; and (3) the discriminatory classifications contained in the challenged statutory scheme do not undercut any other countervailing state interest.
Further, the majority has now decided:
We hold today, as explained infra, that in the context of a law which singles out a particular age group of adults for treatment different under the law from other adults, the classification can only be found constitutional if it is the classification which most directly implicates or furthers the asserted governmental interest. In other words, if the evidence shows there are other age groups which would better further the State's asserted interest, then the classification chosen is inherently arbitrary, capricious and unreasonable where there are no other asserted State interests which would justify choosing the challenged classification over the group which better furthers the asserted State interest.
In my view, this Court in its prior cases, and the majority in this case, have distorted what Article 1, Section 3, actually means. As so eloquently stated by Mr. Roy at the Constitutional Convention, the phrase "no law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of... age" simply means that the "state must show a reasonable basis for it." Sibley, at 1108 n. 24. Thus, the state may meet its burden of proof by showing that the classification reasonably furthers any legitimate state purpose. Today the majority raises the standard so that reasonableness can only be met if, in the subjective judgment of the majority, the legislature's choice to further highway safety is the best one, i.e., it most directly implicates or furthers the asserted governmental interest.[1]
The undisputed evidence produced by the state shows beyond question that the Legislature was not arbitrary, capricious, or unreasonable in passing this Act, because it reasonably furthers the state interest of highway safety. The majority acknowledges that the state's evidence shows that nationwide, drinking laws, such as at issue here, have been proven to save lives. FRAS data *336 and studies show an over involvement of eighteen- to twenty-year-olds in alcohol-related car crashes, such as: (1) in 1994, 44% of traffic fatalities involving eighteen- to twenty-year-olds were alcohol-related, as compared to 40.8% for all traffic fatalities; (2) alcohol-related traffic fatality rates, on a per capita basis are over twice as great for eighteen- to twenty-year-olds as for the population over twenty-one years old; (3) in 1994, more eighteen- to twenty-year-olds died in low-blood alcohol level (.01 to .09) traffic accidents than any other three-year age group; and (4) Louisiana had the fourth highest percentage of alcohol-related traffic fatalities of fifteen-to twenty-year-olds of all states. A 1989 National Highway Transportation Safety Administration study estimated that minimum drinking age laws have been responsible for a 12% reduction in fatal crash involvements of drivers affected by such laws, and NHTSA estimated in 1994 that minimum drinking age laws have reduced traffic fatalities involving eighteen- to twenty-year-olds by 13% and have saved an estimated 14,816 lives nationwide since 1975. The majority simply dismisses all of this undisputed factual information as irrelevant. Although sufficient for Congress to justify enacting the National Minimum Drinking Act, the majority erroneously discards the evidence and states that the only relevant inquiry in this case is the "greatest number of alcohol-related accidents in Louisiana."
Yet the State presented compelling evidence about Louisiana accidents. 1986 Louisiana traffic records data reports compiled by the Louisiana Highway Safety Commission clearly show that eighteen- to twenty-year-old drivers had fatal and injury-producing accidents at the rate of 1 for every 191 drivers in that age group, whereas all other age groups had a substantially higher per capita rate of fatal and injury-producing accidents. The next closest group, the twenty-one- to twenty-four-year-olds, had a per capita rate of 1 out of every 217 drivers. This statistic showed that drivers in the eighteen-to twenty-year-old age group have fatal and injury-producing accidents at a 12% higher rate than the next highest group, the twenty-one- to twenty-four-year-old age group. Further, Ms. Theis's affidavit that eighteen-to twenty-year-old drivers were only 5% of the licensed drivers in Louisiana in 1993 but were involved in 10% of the alcohol-related and fatal injury accidents, also clearly shows a much higher per capita rate for eighteen- to twenty-year-olds for alcohol-involved and fatal and injury car crashes. Again, the majority erroneously dismisses this evidence simply because the twenty-one-to twenty-four-year-old group has a higher number of drivers, thus resulting in a total number of fatal and injury accidents greater for that age group than the eighteen- to twenty-year-old group.
In spite of this overwhelming and compelling statistical evidence which clearly shows the Act does not arbitrarily, capriciously, or unreasonably discriminate based on age, the majority holds that the trial court was not manifestly erroneous in concluding as a factual matter that the state's interest in highway safety is not substantially furthered by the Act. The majority points to statistical evidence, such as eighteen- to twenty-year-olds are neither arrested in greater numbers in Evangeline Parish than other age groups for DWI, and eighteen- to twenty-year-olds are not the age group with the highest incident of DWI convictions in Evangeline Parish. This evidence is easily explained by the fact that eighteen- to twenty-year-olds only make up 5% of the drivers. For instance, Ms. Marcantel's statistics for 1986 show 9 of 92 DWI arrests in Evangeline Parish were eighteen- to twenty-year-olds, over 10% of the total arrests. Her statistics for 1994-95 reveal 10 of 179 arrests for eighteen- to twenty-year-olds, which is 5.6% of the total arrests, larger than the percent of 5% for eighteen- to twenty-year-old drivers in Louisiana. Even if Marcantel's statistics had shown fewer arrests per capita for eighteen-to twenty-year-olds, there are many explanations as to why eighteen- to twenty-year-olds may not be arrested or convicted as frequently as other age groups including: (1) there are fewer eighteen- to twenty-year-old drivers; (2) police officers may be less inclined to arrest young adults for DWI, preferring to take them home instead; and (3) the fewer the arrests, the fewer the convictions. In my view, the evidence presented *337 for arrests in Evangeline Parish supports the reasonableness of the Act because it shows more per capita arrests for eighteen- to twenty-year-olds than any other three-year age group.
Having concluded that the trial court was not manifestly erroneous in finding that the state failed to carry its burden of proof that highway safety is not substantially furthered by the Act, the majority turns it attention to whether or not there are reasonable nondiscriminatory alternatives to the challenged statutory scheme by which the state's asserted interests and objectives might be satisfied. The majority suggests to avoid losing federal funding that the state could: (1) impose an absolute prohibition on the purchase, sale or possession of alcohol beverages of all persons of all ages in the state; or (2) raise the age of majority in the state to twenty-one so that eighteen- to twenty-year-olds would then be minors and would be subject to treatment as such. The majority's first suggestion, prohibition, conjures up the days of speak-easys, tommy-guns, and illegal importation of alcohol. Surely, it is an alternative that was tried and discarded decades ago. The majority's second suggestion that eighteen- to twenty-year-olds be reclassified by the Legislature to be minors, not adults, would not only deprive them of all of the other advantages that they gained by being classified as adults at age eighteen, but would also raise serious equal protection problems under the majority's own test herein. Would not a law to reclassify eighteen-to twenty-year-olds as minors simply to deny them the right to drink alcohol be arbitrary, capricious, and unreasonable under the majority's determination that state highway safety is not substantially furthered by denying them the right to drink?
In summary, every state (but Louisiana) and the federal government have drinking laws similar to the one in question. Common sense dictates that the legislatures of all other states and the Congress would never have passed such laws without a reasonable basis. The reasons are obvioustraffic safety. The undisputed evidence introduced by the state shows that Louisiana drivers in the age group of eighteen- to twenty-year-olds have a much greater frequency of fatal and injury-producing accidents than any other three-year age group. The trial court was not free to disregard or minimize this evidence nor is this Court. In my view, the evidence presented shows a reasonable basis for the law, and the legislature did not arbitrarily, capriciously, and unreasonably discriminate against the eighteen- to twenty-year-olds. I would reverse the trial court's ruling of unconstitutionality and dismiss plaintiffs' claims.

Justice Johnson filed Opinion Dissenting from Original Opinion March 14, 1996
JOHNSON, Justice, Dissenting
I respectfully dissent.
The evidence presented by the State clearly shows that the challenged classification is not arbitrary, capricious or unreasonable by showing that the classification substantially furthers the important State objective of highway safety. The State introduced into evidence national statistics which established a direct relationship between alcohol related accidents and the age group classified by the Louisiana statute. According to those statistics, Louisiana had the fourth highest percentage of alcohol related traffic fatalities of fifteen to twenty year olds of all States in the nation. In 1994, more persons in the age group classified under the Louisiana minimum drinking age statute died in low blood alcohol level traffic crashes than any other three year age group. Moreover, in 1994, 44% of the traffic fatalities involving persons ages eighteen to twenty were alcohol related as compared to 40.8% for all traffic fatalities. Alcohol related traffic fatalities were over twice as great on a per capita basis for persons age eighteen to twenty as for the population over twenty. This evidence is undoubtedly relevant to evaluating the reasonableness of the classification. Based on the evidence presented, I believe that the State met its burden of proving that there was a reasonable basis for enacting the law at issue.
Moreover, I disagree with the majority's holding that "in the context of a law which singles out a particular age group for treatment different under the law from other age groups, the classification can only be found constitutional if it is the classification which *338 most directly implicates or furthers the asserted governmental interest." I believe that this is an unwarranted expansion of the state's burden of justifying a classification based on age. Its application has the effect of heightening the intermediate level of scrutiny previously articulated by this court in Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985) and Pace v. State, Through Louisiana Employees Retirement System, 94-1027 (La. 1/17/95), 648 So.2d 1302.
Since the state proved that the law has a reasonable basis and the legislature did not arbitrarily, capriciously, and unreasonably discriminate against eighteen to twenty year olds, I would reverse the trial court's ruling declaring unconstitutional La.R.S. 14:93.10 through La.R.S. 14:93.14, La.R.S. 26:90, and La.R.S. 26:286, and dismiss plaintiffs' claims.

95-2189 (La. 7/2/96)

ON REHEARING
LEMMON, Justice.[*]
This rehearing was granted to reconsider the earlier decision which held unconstitutional the statutory provisions that raised the minimum drinking age in this state to twenty-one. On original hearing, a majority of this court ruled that these statutes violated the equal protection afforded by La. Const. art. I, § 3 against arbitrary discrimination based on age. On reconsideration, we conclude that the statutes establishing the minimum drinking age at a level higher than the age of majority are not arbitrary because they substantially further the appropriate governmental purpose of improving highway safety, and thus are constitutional.

I
In 1986, the Legislature raised the minimum drinking age in the state from eighteen to twenty-one. See La.Acts 1986, No. 33, amending and reenacting La.Rev.Stats. 14:91.1, 91.2 and 91.5. While the new statutes made drinking alcoholic beverages by a person under twenty-one a crime, there were no penalties for selling alcoholic beverages to persons below the minimum age.
In 1995, the Legislature amended and reenacted La.Rev.Stat. 26:90A(1)(a) and (b), and 26:286A(1)(a) and (b); enacted La.Rev. Stat. 14:93.10-93.14; and repealed La.Rev. Stat. 14:91.1-91.5. See La.Acts 1995, No. 639. These statutes imposed penalties for selling alcoholic beverages to persons under twenty-one, thus closing the previous "loophole" which had made the minimum drinking age law unenforceable as a practical matter.
Challenging the constitutionality of Act 639 of 1995 and seeking both declaratory and injunctive relief, plaintiffs commenced this action in the form of a class action with two plaintiff subclassespurchasers and retailers. The trial judge granted a temporary restraining order, prohibiting defendants from enforcing any prohibition against the purchase, possession, service or sale of alcoholic beverages to persons between the ages of eighteen and twenty-one pending the injunction hearing.
After the hearing on the preliminary injunction at which both sides presented evidence, the trial judge granted plaintiffs declaratory relief, ruling that Act 639 of 1995 constituted arbitrary age discrimination in violation of La. Const. art. I, § 3. The trial court further granted injunctive relief,[1] prohibiting enforcement of the unconstitutional statutes. This direct appeal followed. La. Const. art. V, § 5(D).
On original hearing, a majority of this court affirmed the trial court's decision declaring the minimum drinking age provisions unconstitutional under La. Const. art. I, § 3. On the State's application, we granted rehearing to reconsider the correctness of that decision.

II
La. Const. art. I, § 3, provides:
No person shall be denied the equal protection of the laws. No law shall discriminate *339 against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime. (emphasis added).
In asserting the constitutional challenge to the minimum drinking age statutes, plaintiffs rely on the special protection against arbitrary discrimination based on age set forth in the third sentence of La. Const. art. I, § 3.
In Sibley v. Board of Supervisors of Louisiana State Univ. and Agric. and Mechanical College, 477 So.2d 1094 (La.1985),[2] we construed this third sentence of Section 3 to mean that when a statute classifies persons on a basis therein enumerated, the statute is unconstitutional unless the proponents of the statute prove this legislative classification "substantially furthers an appropriate state purpose." Id. at 1108. In so holding, we expressly repudiated the notion that the federal system of equal protection review should be used as a model for interpreting or applying this third sentence of Section 3, concluding that "the state constitution calls for more than minimal scrutiny of certain types of classifications, and assigns the state the burden of showing that such legislation is not arbitrary, capricious or unreasonable." Id. at 1107.
As we recently explained in Moore v. RLCC Technologies, Inc., 95-2621 (La. 2/28/96), 668 So.2d 1135, La. Const. art. I, § 3 sets up a spectrum for analyzing equal protection challenges based on discriminatory classifications. At one extreme are laws that classify persons based on race or religious beliefs. Under the second sentence of Section 3, such laws are repudiated completely. See Louisiana Associated Gen. Contractors, Inc. v. State through Div. of Admin., Office of State Purchasing, 95-2105 (La. 3/8/96), 669 So.2d 1185.
At the other end of the spectrum are laws that classify persons on any basis other than those bases expressly enumerated in Section 3. These laws are reviewed under the standard set forth in the first sentence, which has been construed to mean that every statutory classification must pass the minimum standard of being rationally related to a legitimate governmental purpose.[3] Whenever a person disadvantaged by such a classification seeks to have the law declared unconstitutional, that person has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest.
In the middle of the spectrum are laws that classify persons on the basis of the six grounds enumerated in the third sentence of Section 3: (1) birth, (2) age, (3) sex, (4) culture, (5) physical condition or (6) political ideas or affiliations. A law containing a statutory classification based on any of the six enumerated grounds does not enjoy the usual presumption of constitutionality. Moreover, with that reversal of the ordinary presumption of constitutionality comes a reversal of the rule that ordinarily places the burden of proof on the party seeking a declaration of unconstitutionality. When the court reviews such a law, the burden is on the proponent of the classification and the standard of review is heightened, requiring the proponent to establish that the classification is not arbitrary, capricious or unreasonable because it substantially furthers an appropriate governmental objective.[4]Moore v. RLCC Technologies, *340 Inc., 95-2621, pp. 9-10 (La. 2/28/96), 668 So.2d 1135, 1140-41.
In summary as to the two lower levels of scrutiny, the standard under the Louisiana Constitution for determining the constitutionality of a statute that sets up a classification on any basis not enumerated in Section 3 is whether the classification under the presumptively constitutional statute furthers any legitimate governmental interest, and the opponent has the burden of proof. On the other hand, the standard for determining the constitutionality of a classification based on age is stated expressly in La. Const. art. I, § 3the classification cannot "arbitrarily, capriciously or unreasonably discriminate." Because age classification is specifically enumerated in Section 3 and because an age classification must have a non-arbitrary basis, the burden of proof is on the proponent of constitutionality to show that the statute estabilishing such a classification substantially furthers an appropriate governmental purpose.
The principal differences in the standards for the two lower levels of scrutiny are the placement of the burden of proof and the requirement for the middle level that the appropriate governmental purpose be a substantial reason for the classification rather than merely an incidental consideration.[5]

III
As noted above, the standard of scrutiny appropriate for review of a statute that classifies persons on the basis of age is whether the classification substantially furthers an appropriate governmental purpose. There is general agreement that improving highway safety is an appropriate governmental purpose, and an important one. The narrow issue is thus whether the age classification in these statutes substantially furthers that purpose.
On original hearing, the majority applied the above-stated standard to the evidence and framed the relevant inquiry as "whether eighteen to twenty year olds are the age group responsible for the greatest number of alcohol related accidents in Louisiana." 95-2189 (La. 3/8/96), p. 14 (emphasis added). In concluding that the evidence failed to establish that this age group was responsible for the greatest number of alcohol-related accidents in this state, the majority compared age groups in three-year segments. The majority rejected evidence that the eighteen-to-twenty-year-old age group was "over-represented"[6] to a greater degree than other three-year age groups in alcohol-related accidents, because other three-year age groups with a larger number of licensed drivers were involved in a larger number of alcohol-related accidents. The majority also rejected the national statistics presented by the State, reasoning that while the national data provided sufficient justification for Congress under the Commerce Clause to enact the National Minimum Drinking Age Act, see South Dakota v. Dole, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), that national data did not provide sufficient justification for an increase in the minimum drinking age in Louisiana. Using this focus on absolute numbers and Louisiana statistics, the majority concluded that "eighteen to twenty year *341 olds are not the group responsible for the greatest number of alcohol-related accidents in Louisiana." 95-2189 (La. 3/8/96), p. 14 (emphasis added).
On rehearing, we frame the relevant inquiry differently and employ a different focus.
The statute under review involves a change in the minimum drinking age. The precise question is whether the raising of the minimum drinking age from eighteen to twenty-one, which discriminates against adults in the lowest range of adulthood by postponing their legal access to alcoholic beverages, substantially furthers the governmental objective of improving highway safety. The inquiry should focus on the reasons for and effect of removing eighteen-to-twenty-year-old persons from the group of licensed drivers who are allowed to drink alcohol legally. The analysis should examine the relation of the two classes to each other by comparing licensed drivers in the eighteen-to-twenty-year-old group in alcohol-related accidents with licensed drivers in the age group of twenty-one and above. The inquiry should also include consideration of the reasons, presented by the evidence, for raising the minimum drinking age in order to affect highway safety.

IV
A detailed summary of the evidence introduced at trial is attached to this opinion as an appendix.
The governmental objective at issue is improving highway safety. The means chosen by the Legislature to improve highway safety in these particular statutes are aimed generally at the problem of drinking and driving, a problem that pervades all age groups, but specifically at the problem of youthful drinking and driving. The eighteen-to-twenty-year-old age group, who are barely experienced at driving legally, are totally inexperienced at drinking legally. In the words of the Commander of the Louisiana State Police, allowing this group to use alcohol has a detrimental effect on highway safety because the group "is not only inexperienced at driving but is also inexperienced at drinking." The Commander, based on his experience, expressed his expert opinion that the statutes under review are a "most critical and fundamental improvement" in attacking the problem of intoxicated drivers.
Increasing the minimum drinking age clearly is a rational and non-arbitrary approach to solving the particular problem of youthful drinking and driving, as well as the overall problem of intoxicated driving.[7] Forty-nine other states and the federal system have adopted this approach as a non-arbitrary method of attaining improvement in the problem. Admittedly, those legislative decisions are not subject to the same equal protection scrutiny as the Louisiana statutes. Nevertheless, unanimous utilization of this approach to the problem is a significant indication that this approach "substantially furthers [the] appropriate state purpose" contemplated in Sibley. Id. at 1108.
Logic and experience were the principal bases for the governmental conclusion that an increase in the minimum drinking age will substantially further the objective of improving highway safety. Statistics were primarily used at trial to provide corroborative support for that conclusion.
The trial court, affirmed by the majority on original hearing, concluded that the statistics did not support that governmental decision. On reconsideration of the evidence and arguments of counsel, we conclude that the trial court erred manifestly on the mixed question of law and fact by using an incorrect method of analysis, and the majority on original hearing fell into the same error.
The majority on original hearing took a mistaken view of the State's argument, noting that the State attempted to justify the classification on the basis that the statutes *342 would reduce the incidence of intoxicated driving and alcohol-related accidents in the eighteen-to-twenty age group. Of course, if that had been the State's argument, there was insufficient justification for a conclusion that the classification substantially furthered the improvement of highway safety in general. As the majority on original hearing noted, prohibiting use of alcohol by any age group would reduce the incidence of intoxicated driving and alcohol-related accidents in that age group and would not justify the discriminatory classification.
The State's principal argument, which we deem valid, is that prohibiting use of alcohol by eighteen-to-twenty-year-old licensed drivers will improve highway safety for all motorists by removing from the general group of alcohol-using licensed drivers the specific group of alcohol-using licensed drivers who are, by percentage, the drivers most frequently involved in alcohol-related accidents. The overall statistical evidence supports this argument.
Of the statistical evidence, the most significant by far was the data obtained by the National Highway Transportation Safety Administration (NHTSA) from studies that were undertaken for the specific purpose of evaluating the effectiveness on highway safety of laws that raised the minimum drinking age to twenty-one. These statistics compared the specific group disadvantaged by the discrimination with the general group of licensed drivers and established, among other things, that the disadvantaged group was involved in twice as many accidents per capita as the general group and that Louisiana ranked above forty-six other states in the percentage of alcohol-related fatalities involving drivers under twenty-one. Other studies combined to conclude that minimum drinking age laws were responsible for significant reductions in traffic fatalities among motorists generally.
The executive director of the Louisiana Highway Safety Commission concluded from Louisiana and national data that alcohol-related fatalities involving young drivers increased significantly at age seventeen and peaked at age twenty. Particularly important was her testimony that persons in the disadvantaged group represented only five percent of the licensed drivers, but were involved in ten percent of the alcohol-related accidents involving injuries or fatalities. The latter statistics are particularly significant because if an increase in the drinking age to twenty-one eliminates drinking by the group of licensed drivers that are involved in twice the number of alcohol-related accidents proportionate to the percentage of drivers in that group, then clearly the increase substantially furthers the goal of improving highway safety. Prohibition of drinking by persons who are proportionately the most dangerous group of drinking drivers has to increase highway safety substantially, as opposed to incidentally.
Other reports outlined in the evidence established that the increase in the drinking age substantially reduces alcohol-related traffic accidents. Although any prohibition in the use of alcohol would have some beneficial effect on alcohol-related accidents, the specific evidence referred to in the previous paragraph establishes that the increase in the drinking age to twenty-one would have a significantly greater effect in reducing alcohol-related accidents.
The trial court's finding that the challenged classification does not substantially further the State's interest in improving highway safety because members of the disadvantaged group in Louisiana are neither arrested in greater numbers for intoxicated driving nor involved in greater numbers of alcohol-related accidents was erroneous as a matter of fact and law. First, there was no reason to reject from consideration the statistical data, studies, reports and expert opinions from outside Louisiana, and especially those studies that were specifically performed to evaluate the effectiveness of the increase in the minimum drinking age to twenty-one.[8] Second, the court erred in considering a reduction in the gross number of *343 accidents as the only means of improving highway safety. The State sought to improve highway safety by removing access to alcohol from the age group that is most likely, by percentage of licensed drivers, to be involved in alcohol-related accidents. The government may choose one of several appropriate methods for improving highway safety, as long as the method chosen substantially furthers that purpose. The proper approach for evaluating the statistical support for the method chosen by the State was to compare the disadvantaged group with the group of licensed drivers above twenty-one and to determine if the disadvantaged group was involved proportionately in significantly more alcohol-related accidents. Use by the trial court, as approved by this court's original hearing majority, of absolute numbers of accidents in each group (or in three-year age groups), without reference to the number of drivers in each group, was an improper focus for determining whether the classification is substantially related to the achievement, by the means chosen by the government, of an improvement in highway safety for motorists of all ages. These errors in method of analysis led to a manifestly erroneous conclusion.

V
The trial court further erred in accepting plaintiffs' argument that the decision in Pace v. State, Through La. State Employees Retirement Sys., 94-1027 (La. 1/17/95), 648 So.2d 1302 imposed three additional requirements to the burden of proof established by Sibley.
In their trial brief, plaintiffs set forth their interpretation of Pace as adding three additional requirements to the Sibley standard for determining whether legislation falling within the intermediate level of scrutiny under La. Const. art. I, § 3 substantially furthers an appropriate governmental interest. These three "requirements" were reiterated in brief to this court as follows:
Accordingly, the Age Legislation must survive the three Pace tests:

First, each interest must actually be implicated by the statutory scheme, Pace, 648 So.2d at 1309;

Second, there must be no non-discriminatory "alternatives which deal directly" with the asserted interest, Id.; and

Third, the age discrimination must not "undercut" a "countervailing state interest." Id. at 1310.
Plaintiffs' argument in the present case that Pace imposed additional requirements for intermediate review is erroneous. In Pace, this court merely reaffirmed that the proper standard for intermediate review of the statutory classifications expressly enumerated in the third sentence of Section 3 is the standard articulated in Sibley. We now clarify that Pace was simply a specific application of the Sibley standard to a concrete factual record and that Pace neither altered nor expanded the Sibley standard.
The Pace decision involved a challenge to a retirement statute that classified persons on the basis of birth or legitimacy. This court, using the Sibley standard for the enumerated categories in La. Const. art. I, § 3, held that the statute which required an illegitimate child of a male member of the retirement system to obtain a judgment of filiation in order to receive survivors' benefits, while not imposing the same requirement on legitimate children of members or on illegitimate children of female members, did not substantially further the State's asserted interests in the orderly disposition of property at death and the prevention of fraudulent or stale claims. The decision additionally noted, clearly for purposes of that factual situation only, that the former interest, although usually an important concern as to parental inheritance by illegitimate children, is "not implicated by the instant statutory scheme" (which provided for fixed monetary benefits) and does not involve the ownership of immovables or the need for finality required in succession proceedings. Id. at 1309.
The Pace decision further mentioned that there was a more effective non-discriminatory means of preventing fraudulent claims by the use of extremely reliable evidence, available through advances in modern scientific technology, to prove filiation, and that the strength of the asserted state interest in preventing fraudulent claims was undercut *344 by a countervailing state interest in ensuring that genuine claims for child support are satisfied.
While these three factors perhaps were relevant for rejecting the classification in the factual context of Pace, these factors were neither part of the holding in Pace nor were these adopted as mandatory requirements for the intermediate level of scrutiny. Nevertheless, because the trial judge in the present case found a deficiency in the State's case based on failure to prove these factors, we discuss each separately.

A
The trial court ruled that the State failed to prove that the asserted governmental interest in improving highway safety was actually implicated by the classifications in the statutory scheme, as required by Pace.[9]
The innocuous language in the Pace decision that the State's interest in the orderly disposition of property at death was not actually implicated by the statutory scheme that provided for fixed benefits hardly suggests that Pace added a significant burden to Sibley's intermediate scrutiny standard. Rather, the language in Pace indicates that there simply was not a substantial relationship in that case between the classification and the asserted governmental interest, which is essentially an application of the Sibley standard.
Since few classifications provide for a perfect fit[10] between the classification and the asserted governmental purpose or for a completely irrational mismatch of classifications with purposes, "[t]he key factor in reviewing classifications is the degree of correlation between the means and the ends that is required by the judiciary and the extent to which the judiciary will analyze the permissible purpose of the legislation." Ronald D. Rotunda and John E. Nowak, 3 Treatise on Constitutional Law § 18.2 (2d ed. 1992). This factor is dependent upon the standard of scrutiny applicable to the legislation in question.
In applying the federal intermediate standard of scrutiny in a case involving gender classification, the Supreme Court in Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456-57, 50 L.Ed.2d 397 (1976), framed the inquiry as whether the classification serves "important governmental objectives and [is] substantially related to achievement of those objectives,"[11] and focused on the classificatory fit. Considering a challenge to a statute *345 that prohibited the sale of "nonintoxicating" 3.2% beer to males under the age of twenty-one and to females under the age of eighteen, the Court held that statistics broadly establishing 0.18% of females and 2% of males in that age group were arrested for alcohol-related driving offenses could not support the use of gender as a classifying device. The Court commented that the correlation between the gender classification and the objective of enhancing traffic safety was "an unduly tenuous `fit.'" Id. at 202, 97 S.Ct. at 459. Noting that the limited statistical data failed to consider the dangerousness of "non-intoxicating" 3.2% beer as opposed to alcohol generally, the suggestion that young men who drink and drive are transformed into arrest statistics while their female counterparts are chivalrously escorted home, or the fact that the statute only prohibited selling 3.2% beer to young males (and not their drinking the beverage), the Court held that the relationship between the gender classification and the goal of traffic safety was far too tenuous to support a conclusion that the classification was substantially related to achievement of the statutory objective.[12]
In the present case, there is a common sense and experience-based relationship between the classification resulting from the increase in the minimum drinking age and the statutory objective of reducing youthful drinking and driving to improve highway safety. That relationship is supported by statistical data, when viewed in the proper focus. Although there is the difficulty noted in Craig of proving broad sociological propositions by statistics, the statistics in the present case were only necessary to provide corroborative support for the proposition, widely accepted by experts, that raising the minimum drinking age is substantially related to the improvement of overall highway safety by reducing alcohol-related accidents.[13]
We conclude that there is a substantial relationship in the present case, that was absent in the Pace case, between the classification and the asserted governmental interest, which is all that Sibley requires.

B
The trial judge also imposed a burden on the State to prove that there were no non-discriminatory alternative methods for reducing accidents caused by intoxicated driving. The judge listed alternatives, among others, such as public education, lowering the legal blood-alcohol level for drivers, and mandating lengthy driver's license suspensions.
This burden imposed on the State by the trial judge, at plaintiffs' suggestion that Pace required this burden, is seldom appropriate in intermediate scrutiny cases. In the federal system, cases requiring strict scrutiny because suspect classes or fundamental rights are involved sometimes mandate that the classification be narrowly tailored to achieve the specific governmental objective.[14] Ronald D. Rotunda and John E. Nowak, 3 Treatise on Constitutional Law § 18.3 (2d ed. 1992). The intermediate scrutiny standard adopted by Sibley for review of age classification statutes falls far below the strict scrutiny standard in the federal system. Indeed, the Sibley standardthe classification must substantially further an appropriate governmental interestis virtually the same as the intermediate scrutiny standard enunciated in Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)the classification must serve important governmental objectives and must be substantially related to achievement of those objectives. Neither the Sibley intermediate standard nor the Craig intermediate standard requires that the proponent of the statute prove there are no non-discriminatory methods of achieving the objective sought by the statute, as the trial judge required in the present case.

*346 C
The trial judge indicated that the State had the burden to prove that the age classification does not undercut any countervailing governmental interest. However, the judge did not discuss this "requirement" any further in reasons for judgment. Suffice it to say, the Sibley intermediate standard contains no "requirement" that the proponent of the statute prove the classification does not undercut any countervailing governmental interest, and the trial judge erred in imposing this requirement.[15]

VI
Plaintiffs' final argument is that even if implementation of the prohibitions in the challenged statutes would substantially further the governmental objective of improving highway safety, the statutes contain so many exceptions that the asserted objective "is not even implicated, much less substantially furthered."
La.Rev.Stat. 14:93.12 makes it a crime for a person under the age of twenty-one to purchase or to have public possession of alcoholic beverages. La.Rev.Stat. 14:93.10 defines "public possession" to include "consumption, on any street or highway or in any public place or any place open to the public, including a club which is de facto open to the public," but carves out of that definition the exceptions at issue. The exceptions exclude from "public possession" the possession or consumption of alcoholic beverages in the following five settings:
(i) For an established religious purpose.
(ii) At a function sponsored by a bona fide nonprofit organization under 26 U.S.C. 501(c) where an individual had received or purchased a ticket for admittance.
(iii) When a person under twenty-one years of age is accompanied by a parent or legal custodian twenty-one years of age or older.
(iv) For medical purposes when prescribed or administered by a licensed physician, dentist, nurse, hospital, or medical institution.
(v) In private residences.
La.Rev.Stat. 14:93.10(2)(a).[16]
The State argues that almost all of the other forty-nine state statutes have similar exceptions permitting under-aged persons to drink in certain situations. Plaintiffs counter that while the minimum drinking age laws of other states contain similar exceptions, no minimum drinking age law of any state contains as many exceptions as the Louisiana statute. Plaintiffs contend that the inconsistencies presented by the exceptions undermine any furtherance of the governmental purpose. Noting that under-aged persons can nevertheless drink alcohol legally in their residences, at religious events, with parents and at bona fide nonprofit functions, plaintiffs submit that the statutes, when considered with the numerous exceptions, authorize public possession and consumption of alcohol by this age group in so many settings that the statutes cannot substantially further the governmental interest of improving highway safety.
The issue is determined by examining the State's purposeimproving highway safetyand *347 determining the effect, if any, the exceptions have on that purpose. Therefore, the statutory exceptions must be individually and collectively examined to determine whether they, as the trial court concluded, undercut the State's appropriate objective of improving highway safety.
No one disputes the exceptions for medical and religious purposes. See Felix v. Milliken, 463 F.Supp. 1360 (E.D.Mich.1978) (noting accepted notion that religious and medical purposes are exceptions from such statutory and constitutional drinking age provisions). Rather, the dispute is over the other three exceptions.
The exceptions for consumption in a private residence or consumption with a parent or legal custodian share the common notion of family occasions, and we therefore address them together.
The trial judge concluded that since these exceptions allowed under-aged persons to consume alcoholic beverages "as much as they want" in certain settings uncontrolled by governmental supervision over alcoholic beverages, the exceptions effectively undermined the stated objectives of improving protection of the motoring public from youthful driving and drinking, as well as undermining the governmental policy favoring temperance.
Contrary to the trial judge's suggestion, this is not a temperance statute. Rather, the purpose of this statute is to curtail the ready availability of alcohol to inexperienced drivers and drinkers in this age group. The real danger at which the minimum drinking age law is aimed is the situation of under-aged persons' buying drinks at bar rooms and convenience stores before driving around in their vehicles. This is the setting in which the greatest danger of accidents is presented. On the other hand, when under-aged persons drink alcohol at home or with parents or guardians, theoretically their parents or guardians are not likely to allow them to drive on the highways after such drinking, and thus theoretically far less danger is presented.
This theoretical division between public settings and family settings is based on family controls versus societal controls on drinking and driving. Tracking that division, the exceptions restrict alcohol consumption by this age group to family-controlled settings, leaving the prohibition applicable primarily to non-family settings in public places. The statutory objective of reducing the ready availability of alcohol to under-aged persons likely to drive after drinking thus is not undercut by the two exceptions which permit consumption in family-controlled settings.
The exceptions also recognize the reality that the Legislature can control alcohol acquisition, possession and consumption in certain settings, but cannot exercise control, short of enacting a temperance statute, in certain other settings. When these exceptions are viewed in accordance with the division of control between the State and parents, the statutory exceptions do not undermine the statute's furtherance of the governmental purpose.
As to the final exception for consuming alcohol at ticketed functions sponsored by bona fide nonprofit organizations, we take judicial notice of the fact the Legislature recently amended La.Rev.Stat. 14:93.10(a) and totally repealed this exception. La.Acts 1996, No. 78. While this exception no longer affects the constitutionality of the present statute, we nevertheless analyze the effect of the exception as it existed at the time of the trial of this case.
Allowing persons between eighteen and twenty-one to drink alcohol at a ticketed event sponsored by a bona fide nonprofit organization is a very narrow exception to the prohibitory law against "public" possession and consumption of alcohol by this age group. The exception distinguishes between (1) a public place or a club which is de facto open to the public and (2) a single ticketed event held by a good faith nonprofit organization. While there is some "public" nature to this type of function, the effect of this infrequently anticipated occasion for drinking alcohol under this now repealed exception cannot truly be said to undermine the effect of the overall prohibition on the improvement of highway safety.
*348 For these reasons, the judgment of the trial court is reversed, and plaintiffs' action is dismissed.
JOHNSON, J., concurs in result.
BLEICH, J., concurs and files additional reasons and subscribes to the majority opinion.
KIMBALL and MARCUS, JJ., dissent and assign reasons.

APPENDIX:[1]
At the injunction hearing in the trial court, both sides submitted extensive affidavit testimony and documentary materials, and two live state expert witnesses testified.
Both sides introduced portions of the Louisiana Highway Safety Commission's raw data compilations. Particularly, plaintiffs introduced relevant portions of the 1986, 1991 and 1992 Louisiana Traffic Records Data Reports ("Louisiana Reports").[2]
The 1986 Louisiana Report showed that the 18-20 year olds had 854 total alcohol-related fatal and injury accidents. By comparison, the 21-23 year olds had 924 such accidents; and the 24-26 year olds, 837. Adjusted to reflect the number of licensed drivers, however, the 1986 data report reflected that 18-20 year olds had fatal and injury-producing accidents at a per capita rate of 1 for every 191 drivers in that age group; whereas, all other older age groups had substantially higher per capita rates of alcohol-related fatal and injury-producing accidents, with the nearest group being the 21-23 year olds, having a per capita rate of 1 for every 217 drivers, followed by the 24-26 year olds, having a per capita rate of 1 for every 263 drivers.
The 1991 Louisiana Report employed a different methodology, using 4-year age grouping, and splitting the relevant 18-20 year old category into 2 categories: 15-19 and 20-24. Nonetheless, the 1991 report reflected that only 9.61% of all accidents for the 15-19 years olds were alcohol-involved; whereas, the corresponding statistic for the 20-24 year olds was 13.70%; the 25-29 year olds, 14.06%; the 30-34 year olds, 13.84%; the 35-39 year olds, 11.47%, and the 40-44, 11.89%.
The 1992 Louisiana Report employed yet another methodology, reflecting that the 15-20 year olds had 337 total alcohol-related fatal and injury accidents; whereas, the 21-24 year olds had 402 total such accidents; the 25-29 year olds, 479; the 30-34 year olds, 426; and the 35-39 year olds, 330.
The 1993 Louisiana Report, discussed in more detail below in connection with Bette Theis' affidavit, was introduced in full by the State and, as plaintiffs point out, reflected that of the 509 total accidents involving 18-20 year olds, 352 (69.12%) involved alcohol impairment. In comparison, the report reflected that of the 517 total accidents involving 22-24 year olds, 377 (72.92%) involved alcohol impairment.
Plaintiffs also submitted 3 affidavits and documentary materials to establish that 18-20 year olds are arrested and convicted less often on DWI charges than other older 3-year age groups. Particularly, plaintiffs introduced affidavits from Charles Lombardino, Mary Jane Marcantel and Joseph W. Demourelle.
Lombardino, a Shreveport citizen, attested to DWI statistics he acquired from Caddo, Bossier City and Shreveport police departments. Lombardino attested that he requested and received statistical evidence from those departments listing the number of DWI citations issued, by age, for the year 1994. The Shreveport data was of no use in this case given that it was divided into age groups which split the 18-20 year olds into different categories. The Bossier City data showed that there were 22 DWI citations issued to drivers 20 and under and 119 DWI citations issued to drivers 21-30 years old. Assuming that the 21-30 years old group had an even distribution of citations, every 3-year age group in that range had an average of 36 DWI citations during this same time period.
Marcantel, an experienced paralegal, was employed by plaintiffs to conduct statistical research, analyzing certain official DWI statistical records in Evangeline Parish for *349 1986, 1994 and 1995. Her research revealed that of the 92 DWI arrests in Evangeline Parish in 1986, 9 were of persons 18-20 years old, 13 were of persons 21-23 years old, and 12 were of persons 24-26 years old. Still further, she found that of the 179 DWI arrests during the period January 1, 1994 to July 28, 1995, 10 were of persons 18-20 years old as compared to 16 of persons 21-23 years old and 25 of persons 24-26 years. Summarizing, her research revealed that fewer 18-20 year olds were arrested for DWI in Evangeline Parish in either time period than either 21-23 or 24-26 years old.
Demourelle, an Evangeline Parish detective, also attested regarding DWI statistics in Evangeline Parish and regarding his experience with alcohol issues with young drivers. He stated that he researched and reviewed the criminal arrest and probation records of Evangeline Parish for the period January 1, 1995 to July 31, 1995, to determine the number of DWI convictions in that parish during that time frame and the age of the persons convicted. He stated that his research revealed of the 79 DWI convictions in Evangeline Parish during that time, only 1 was of a person under 21 years old.[3]
Plaintiffs also introduced the affidavit of Robert Gramling, a professor of sociology at the University of Southwestern Louisiana, who has studied the relationship between drinking age legislation and alcohol consumption. His research, consisting of studies done in 1986 and 1992 comparing drinking habits of young adult college students in Louisiana and North Carolina, revealed a lack of empirical evidence to support the assumption that raising the drinking age to 21 resulted in a decrease in alcohol consumption by 18-20 year olds. Indeed, his research strongly suggested that increased quantities of alcohol may be consumed by 18-20 year olds where the drinking age is raised to 21.
Focusing on the Louisiana statutes at issue, Professor Gramling concluded that raising the legal drinking age in 1986 did not significantly change the alcohol consumption of 18-20 year olds in Louisiana. Commenting on the statutory exceptions, he stated that the exceptions "make it extremely likely that consumption of alcoholic beverages by persons between eighteen and twenty-one years of age will change locations from supervised public places to unsupervised places, further resulting in a potential increase in amounts consumed by this age group."
Discussing the latter shift in location of consumption, Dr. Gramling made a division between alcohol consumption in controlled and in uncontrolled setting. "Controlled" settings included those at which an under-aged youth may be required to provide proof of age as well as places at which societal controls are in place (public places and on the highway). "Uncontrolled" settings included those in which the sole controls are from family and guardians.[4] Dr. Gramling concluded that raising the drinking age merely shifts the location of consumption from "controlled" settingsbars, cars and highway to "uncontrolled" settingsprivate residences, fraternity houses, and friends housesand found that it had no, or perhaps even an inverse effect, on consumption.
Dr. Gramling referred to this location shift as "front loading," which he defined as "consuming *350 alcohol at home to the desired intoxication level before going out to situations in which consumption will be illegal." Hence, fewer drinks are needed in controlled situations throughout the evening in order to maintain a desired level of intoxication. He noted the obvious implications of this on highway safety given that the youth will be intoxicated while travelling to and from their designation.
Turning to the State's evidence on the highway safety issue, the State introduced affidavits from James Hedlund and Bette Theis.
James Hedlund was the Acting Associate Administrator for Traffic Safety Programs, and Director of the Office of Alcohol and State Programs, National Highway Traffic Safety Administration (NHTSA), U.S. Department of Transportation. Hedlund attested that "NHTSA has monitored the involvement of teenage drivers in fatal traffic crashes and the effectiveness of state laws establishing 21 as the legal age for purchase and public possession of alcoholic beverages. The Office of Alcohol and State Programs is responsible for NHTSA's impaired driving (resulting from alcohol or other drugs) and traffic records program." Hedlund further attested that 23 U.S.C. § 158 documented that state age 21 laws have saved lives, encouraged all states to adopt such age 21 laws, and solved the notorious "blood border" problem"teenagers in an age 21 State no longer could drive to an adjoining State, drink legally, and then crash on their way home."
Relying on statistical data obtained by NHTSA through its Fatal Accident Reporting System ("FARS") and from reports studying age 21 drinking law effectiveness, Hedlund provided the following data.
First, he noted that over-involvement of 18-, 19- and 20-year-olds in alcohol-related crashes has been established by the following four findings:
(1) In 1994, 44% of 18-, 19-, and 20-year-old traffic fatalities were alcohol-related; this compares to 40.8% for all traffic fatalities.
(2) Alcohol-related traffic fatality rates (fatalities per capita) are over twice as great for 18-, 19-, and 20-year olds as for the population over 21.
(3) More 18-, 19-, and 20-year olds died in low (.01 to .09) blood alcohol level traffic crashes than 21-, 22-, and 23-year olds, or any other 3-year group, in 1994.
(4) In 1994, Louisiana had the 4th highest percentage (57.2%) of alcohol-related traffic fatalities of 15-20 year olds of all States (behind Alaska, Delaware, and New Mexico).
Second, Hedlund noted that the effectiveness of age 21 drinking laws has been established by the following three reports:
(1) A Government Accounting Office (GAO) report to Congress, Drinking-Age LawsAn Evaluation Synthesis of Their Impact on Highway Safety, March 1987, examined 14 high quality traffic accident studies. The report concluded that "[r]aising the drinking age has a direct effect on reducing alcohol-related traffic accidents among youths affected by the laws, on average, across the states." The report further stated that "[a]lmost all studies have found statistically significant reductions in traffic-accident outcomes, even though the studies often varied in scope, design, analysis methods and outcome measured."
(2) A January 1989 NHTSA study, The Impact of Minimum Drinking Age Laws on Fatal Crash Involvements: An Update of NHTSA Analyses, estimated that minimum drinking age laws were responsible for a 12% reduction in fatal crash involvements of affected drivers.
(3) In 1994, NHTSA estimated that state 21-year-old minimum drinking age laws have reduced traffic fatalities involving drivers 18-20 years old by 13% and have saved an estimated 14,816 lives since 1975.
The State also introduced the affidavit of Bette Theis, the Executive Director of the Louisiana Highway Safety Commission. She attested, based on the Louisiana Highway Safety Commission, 1993 Traffic Records Data Report, discussed above, and the NHTSA FARS 1994 Data Summary Report, that Louisiana data for 1993 reflected alcohol-involved *351 fatalities for young drivers increased significantly at age 17, peaked at age 20, and began to decline between ages 22-24. She further attested that "[i]t is proven that in Louisiana and throughout the nation, young drivers are involved in alcohol-related crashes at a disproportionately high rate."
Consistent with the "over-representation"[5] evidence established by the 1986 Louisiana Report and federal data discussed above, Ms. Theis attested that the 1993 Louisiana Report reflect that 18-20 year olds represented only 5% of the licensed drivers in Louisiana in 1993, yet were involved in 10% of the alcohol-involved fatal and injury accidents. In the 46 alcohol-involved fatal crashes during 1993, she attested that 72% of the 18-20 year old age group had been drinking. In the 17-20 year old age group, 26 drivers were killed in alcohol-involved crashes, representing 47% of all traffic fatalities in this age group. Moreover, she commented that "this number (Driver Fatalities) represents the proverbial `tip on the iceberg' and does not include other fatalities in crashes (e.g. passenger and pedestrian) or driver, passenger, and other injuries among young people in this age group."
The State also introduced an affidavit from a doctor and a nurse regarding the effect of alcohol on accidents in general involving 18-20 year olds.
Dr. Melvin Kohn attested that "injuries particularly due to motor vehicle crashes, homicide and suicideare the leading cause of death among persons aged 18-20 years. According to the best data available, alcohol use contributes to the occurrence of 30-50% of injuries." Continuing, he attested that alcohol use can result in "impaired judgment, delayed reaction time, and impulsive behavior" and that "[a]lcohol can exaggerate [the increased] willingness [of adolescents] to take risks, and transform what normally might be a harmless prank or activity into a serious injury either to the risk-taker or to an innocent bystander."
Similarly, David Lawrence, a registered nurse, attested that "[a]lcohol-related injuries are an important cause of death and disability in Louisiana but especially among the young." He further attested that "[t]he use of alcohol has been shown to increase the risk of virtually all types of injuries" and noted that studies of adolescents and young adults in other states reflected that "there is a great amount of evidence that a reduction in alcohol consumption also reduces the number and severity of injuries in this age group."
The State also introduced a copy of the report rendered to Congress by the Government Accounting Office (GAO), entitled Drinking-Age LawsAn Evaluation Synthesis of Their Impact on Highway Safety (March 1987), which is mentioned in Mr. Hedlund's affidavit, discussed above, and in Dr. Scribner's testimony, discussed below. The report cautioned that "[i]t is generally acknowledged that drinking-age laws do not affect traffic accidents directly but are mediated by a variety of intervening variables." Id. at 20. Nonetheless, the report noted that the studies that have analyzed the effect of changes in the drinking age on total crash fatalities for age groups affected by the law have found "statistically significant" effects; particularly, one study found that raising the drinking age resulted in a 7% average reduction in fatalities in the states with the higher drinking age. Id. at 39. The report further noted that "[s]tates with an older minimum [drinking] age seem to have better control over drinking and driving among youths." Id. at 63.[6]
As noted, the State also called two live expert witnesses to testify.
The State's first witness was Captain Ronald Jones, Commander of Troop A of the Louisiana State Police, who was qualified as an expert in traffic enforcement and policy development. Captain Jones testified that, based on his personal experience, the challenged minimum drinking age statutes could be "the most critical and fundamental improvements *352 in traffic safety when it comes to alcohol in this state." He further testified that in his opinion, access to and use of alcohol by 18-20 year olds has a detrimental effect on highway safety because that age group "is not only inexperienced at driving but is also inexperienced at drinking." Continuing, he testified that "when you combine those two levels of inexperience you are really facing serious problems. I think all of us were young at one time and we all drove at one time and we know that we took risks when we were younger on the highway that we clearly would not take today. When you combine that with alcohol consumption it can be a deadly combination."
On cross-examination, Captain Jones agreed that 21-23 year olds likewise have a high rate of injuries related to drunk driving, stating that "I think that persons in their 20's also have been identified with having problems with drinking and driving in accidents." He further testified on cross-examination that various alternative measures exist that the State could employ to reduce highway accidents, including school educational programs, public advertising about the risk of drinking and driving, using designated drivers, improving automobile and highway design, and tougher DWI laws such as mandatory jail time.
The State's second witness was Dr. Richard Scribner, who was qualified as an expert in public health and preventive medicine. Dr. Scribner testified that, in his opinion, alcohol is the leading cause of death among 18-20 year olds. He testified that this means that although the 3 leading causes of death among 18-20 year olds are accidents, homicide, and suicide, alcohol plays a part in a significant number of deaths attributed to these causes.
Relying on the 1987 Governmental Accounting Office (GAO) Report evaluating other statistical studies of alcohol involved accidents, Dr. Scribner further testified that raising the drinking age decreases alcohol related fatal and injury accidents and that the younger the driver the greater the overrepresentation in alcohol involved auto accidents. Based on that GAO Report, he estimated that enforcement of the challenged minimum drinking age law will result in a 5-28% decrease in alcohol involved fatal injury accidents in Louisiana.
Dr. Scribner testified on cross-examination that his own research has been in the area of alcohol availability and has revealed that peak alcohol consumption occurs between ages 20-24. He further testified on cross-examination that the rate of violent deaths associated with alcohol was consistent across all age groups. In response to questioning regarding the impact of alcohol involvement on violent deaths, he expressed his view that given the "social cues, the social milieu ... the younger you are the less experienced you are in many of the social situations in which alcohol is involved which leads to the types of situations which may result in either a violent altercation or a traffic crash."
BLEICH, Justice, concurring in the majority opinion.
A basic cornerstone of creditable government service is public safety. At times the measures chosen are evident and readily acceptable; at other times the protective provisions are somewhat less popular. It is within the province of the people though, through their elected legislative officials, to make those choices, subject to their own constitution.
Occasionally, the laws chosen to effect the goals of public safety are passed without sufficient public scrutiny. Such is not the case here. The subject legislation has been the source of great public debate.[1] There are those who seek to invalidate these statutes because of the effect on profits stemming from the sale of alcoholic beverages.[2] *353 Some groups, individuals and associations support the subject legislation for safety, moral or social reasons. There are others who are genuinely concerned about any distinction based on age in light of our constitution.[3] These persons, groups and associations provided significant input, information and debate to the legislature prior to the enactment of this legislation. Whether any members of this court disagree with the subject legislative action from a personal standpoint is of no moment. This court's only function is to interpret the statutesthe expression of the public will. It is not the function of this court to legislate.[4]
The people of Louisiana have seen fit to prohibit, based in part on statistical information,[5] the sale and possession of alcoholic beverages to some of their fellow citizens, those above the age of eighteen and less than twenty-one. The people of Louisiana have arguably created these prohibitions for safety and financial[6] reasons. They have concluded that there is too great a risk imposed, not only on those in the subject age category but also on other travelers on our highways, to allow the possession and purchase of alcoholic beverages by persons in this age category.[7] The people of Louisiana have said that they want to remove the "blood borders" that have heretofore existed.[8] The citizenry have taken the position that despite the fact that they discriminate against their fellow citizens of the subject age category *354 concerning the purchase and consumption of alcoholic beverages, the distinction is justified action to prevent further carnage. The people, through the legislature, have concluded that it is better to prevent a higher incidence of accidents and to keep more of their fellow citizens alive and uninjured.[9]
The test adopted by the majority clearly meets the test of constitutionality. The subject statutes will certainly substantially promote the legitimate state interest of safety. To save any lives must be considered of "substantial" import.
The test adopted in the original opinion of the court and by the dissenters today defies the very intent of our constitution. If one were to take the rationale of the dissenters to its conclusion, one would find it impossible to ever draw a distinction based on age. As the dissenters today protest that our constitution is being misinterpreted, they must be reminded that the redactors of the constitution and the people said that sometimes a reasonable distinction must be drawn.
Obviously the subject legislation will not eliminate the carnage, death and destruction on our highways. As total prohibition earlier in this century did not eliminate all social ills, these statutes[10] will not eliminate all highway safety problems. The subject statutes will, however, based on the record and evidence, save a significant number of lives.
The people of Louisiana have expressed their will through their legislators and have made it clear that they desire to impose these protective measures. This court would have acted inappropriately if it declared the judgment of the people unconstitutional and substituted its judgment for that of the people, especially when the people seek their own safety and protection.
I conclude that the legislature did not act arbitrarily, capriciously or unreasonably in enacting the subject statutes. Therefore, with this concurring opinion, I also respectfully adopt the well-reasoned opinion of Justice LEMMON.
KIMBALL, Justice, dissenting.
This case is not about whether 18-20 year olds should be allowed to purchase and consume alcoholic beverages in Louisiana. This case, instead, is about the proper interpretation of the Constitution of the State of Louisiana, as it exists in its present form. If the people of the State of Louisiana desire to prohibit 18-20 year olds from purchasing or consuming alcoholic beverages, the proper method for accomplishing such a result is to amend the Constitution of State of Louisiana. This, of course, is already in the process of being done, as the legislature has placed just such an amendment on the ballot for congressional *355 general elections this year.[1] The function of this Court is to enforce the Constitution of the State of Louisiana, not find ways to justify unconstitutional legislative enactments that we believe, on the basis of "experience and logic" (as opposed to the record evidence), are nevertheless sound social policy. Because the majority herein has conveniently ignored the Constitution of the State of Louisiana, ignored the record evidence, sidestepped the manifest error rule, and disavowed this Court's prior jurisprudence in this area to reach a result not otherwise properly obtainable, I respectfully dissent.
Article I, Section 3 of the Louisiana Constitution, in pertinent part, states: "No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations." Though the majority scarcely acknowledges it, ante at 341, the fact is that Article I, Section 3 of the Louisiana Constitution clearly and explicitly requires greater protection against discrimination on the basis of age than either the United States Constitution or any other State Constitution.[2] Relying on "common sense and logic," ante at 341, 345, instead of the record evidence which clearly shows that, in Louisiana, eighteen to twenty year olds are not the group responsible for the greatest number of alcohol related accidents, the majority holds that it is not "arbitrary, capricious, or unreasonable" for the State to skip over other age groups responsible for the greatest number of alcohol related accidents and penalize a group of adults that has been shown by the record evidence to be responsible for less accidents than the other, non-penalized age groups. In doing so, the majority has conveniently ignored the specific directive of Art. I, Sec. 3 of the Louisiana Constitution that the government shall not arbitrarily or capriciously discriminate against persons on the basis of age, and conveniently ignored the record evidence. Classifying persons on the basis of age, where the record evidence shows the age group singled out is not the group most responsible for the evil which the government seeks to address, is inherently arbitrary and capricious.[3]
Under the majority's reasoning, the legislature could constitutionally decide, on the basis of "logic and experience," that since men are overrepresented in alcohol related accidents, men may not purchase or consume alcohol. This, of course, is what the Oklahoma legislature decided in a statute which was struck down as unconstitutional under federal intermediate scrutiny by the United States Supreme Court in Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), a standard the majority herein acknowledges "is virtually the same as the standard for *356 review of age classification applicable in this case." Ante at 344, n. 11. Recognizing both the similar nature of the issues involved and the applicable levels of review, the majority herein nevertheless holds that there is "a common sense and experience-based relationship" between the challenged classification and the State's stated objective, despite the fact that the record evidence shows otherwise. In our legal system, contested issues should be decided on the basis of evidence properly adduced at trial. I therefore cannot in good conscience ignore both the Constitution of this State and the record evidence to decide this case on the basis of my, or any other judge or group of judges', "common sense and logic."
Of course, by ignoring the prohibitions of Art. I, Section 3 of the Louisiana Constitution, the majority has also conveniently sidestepped the manifest error rule by first deciding that the trial judge erred as a matter of law in his analysis. When the issue is properly analyzed under Article I, Sec. 3, as was done by the trial judge and as was done by this Court in its original opinion, there is no basis whatsoever for reversing the trial court's factual findings and, therefore, no basis for reversing his determination that the challenged statutes' classification of 18-20 year olds arbitrarily, capriciously and unreasonably discriminates against them on the basis of age.
Finally, it has been said that "hard cases make bad law." Such is clearly the case in the instant matter. In Pace v. State, Through La. State Employees Retirement System, 94-1027 (La. 1/17/95), 648 So.2d 1302, this Court unanimously decided that a statute which classified persons on the basis of birth or legitimacy was unconstitutional. In deciding that case, this Court employed several factors, including whether each governmental interest was actually implicated by the statutory scheme, whether any non-discriminatory alternatives which dealt directly with the asserted governmental interest existed, and whether the discriminatory classification undercut any countervailing State interests, to determine whether the discriminatory classification at issue could withstand constitutional challenge. Now, only 18 months later, the majority effectively completely disavows this Court's decision in Pace, ostensibly because the factors described were "simply a specific application of the Sibley standard to a concrete factual record." Ante at 343. In my view, Pace and the analysis employed therein would not be so lightly discarded today but for the purpose of reaching a desired result in the matter at issue herein.
I respectfully dissent.
MARCUS, Justice (dissenting).
In my opinion, there is not a sufficient correlation between restricting the sale of alcoholic beverages to persons under twenty-one and the enhancement of traffic safety to support the conclusion that the classification is substantially related to the statutory objective. The majority permits this based upon tenuous statistical data.[1] To further support its position, the majority relies upon "logic and experience"; however, this depends upon whose logic and experience are being employed. Accordingly, I respectfully dissent.

Chief Justice Calogero filed Opinion Concurring with Rehearing Opinion July 12, 1996
CALOGERO, Chief Justice, assigns additional concurring reasons.
I fully agree with the outcome and the reasoning of the Court's opinion in this case. In my view, the majority on original hearing erred in holding that the State is constitutionally *357 prohibited from enacting a statute that raises the legal age for the purchase and public consumption of alcohol from eighteen to twenty-one.
On original hearing, the majority was led astray, in my view, by two factors. First, we misinterpreted and misapplied our decision in Pace v. State, Through Louisiana State Employees Retirement System, 94-1027 (La. 1/17/95), 648 So.2d 1302. In Pace, as the current opinion notes, this Court used three factors (whether a law implicates a state interest, whether there are non-discriminatory alternatives, and whether the challenged law undercuts countervailing state interests) to determine whether a provision of the State retirement system was valid.
These three factors were taken from Pace and used, for the first time, to stand for the proposition that they are the factors that "Louisiana courts examine" in order to determine whether a law "substantially furthers an important governmental objective." Manuel v. State, 95-2189, p. 5-6 (La. 3/8/96) (quoting Pace, 648 So.2d at 1305) (on original hearing). This declaration by the original majority was an entirely new statement of the law. Prior to our original opinion, Pace had not been interpreted as establishing three additional factors by which challenges to statutes under the Individual Dignity Clause would be evaluated. By applying the Pace factors to this case, the majority on original hearing, added a significant and unsupported burden to Sibley's intermediate scrutiny standard. However, as the current opinion notes, all that is needed in order to support the statute is evidence that it substantially furthers an appropriate governmental interest, not compliance with the factors found applicable and essential in Pace.
The original opinion's addition of the Pace factors to the Sibley standard was a critical error. However, an equally critical error, and the principal one which led us astray, in my opinion, was this Court's interpretation of the statistical evidence in the case. Key to the original opinion was the conclusion that there was no difference in the level of risk incident to alcohol related accidentsposed by drivers in the eighteen to twenty year old group versus the twenty-one to twenty-three year old group and the twenty-four to twenty-six year old group of drivers.
The original opinion framed the issue as "whether eighteen to twenty year olds are the age group responsible for the greatest number of alcohol related accidents in Louisiana," Ante, at p. 340, and concluded that because they were not responsible for the greatest number of accidents, the statute's singling them out, among all post-eighteen year old age groups could not stand. The Court simply counted the number of alcohol related fatal and injury accidents within the eighteen to twenty year old and twenty-one to twenty-three year old groups, found more accidents in the latter group, then concluded that the eighteen to twenty year olds were less dangerous, not more dangerous, than the others. The fallacy in this argument is the fact that there were fewer eighteen to twenty year old licensed drivers than twenty-one to twenty-three year old licensed drivers. In fact, in terms of the number of licensed drivers, there was a greater percentage of eighteen to twenty year old alcohol related accidents than twenty-one to twenty-three year old alcohol related accidents. The eighteen to twenty year old group was thus over-represented in the percentage of alcohol related accidents. This group represented only five percent of licensed drivers, but was involved in ten percent of all alcohol related accidents involving injuries or fatalities, whereas the twenty-one to twenty-three year olds had a lesser percentage of alcohol related accidents notwithstanding that numerically they were involved in more accidents. The statistics, therefore, support the State's position that eighteen to twenty year olds are more dangerous where drinking and driving are concerned.
The prohibition on drinking for a group of drivers (by age) who are proportionately the most dangerous increases highway safety not insubstantially and without illegally discriminating against eighteen to twenty year olds. The legitimate state interest in promoting highway safety is substantially furthered by the statute.
NOTES
[*] Judge Burrell Carter, Jr., First Circuit Court of Appeal, sitting by assignment to fill the vacancy created by the resignation of Justice James L. Dennis. Watson, J. not on panel. Rule IV, Part 2, § 3.
[1] Manuel, Et Al. v. State of Louisiana, Et At., 95-2156 (La. 8/24/95), ___ So.2d ___.
[2] 23 U.S.C. § 158, in pertinent part, provides:

(a) Withholding of funds for noncompliance.
(1) First year. The Secretary shall withhold 5 per centum of the amount required to be apportioned to any State under each of sections 104(b)(1), 104(b)(2), 104(b)(5), and 104(b)(5) of this title on the first day of the fiscal year succeeding the first fiscal year beginning after September 30, 1985, in which the purchase or public possession in such State of any alcoholic beverage by a person who is less than twenty-one years of age is lawful.
(2) After the first year. The Secretary shall withhold 10 per centum of the amount required to be apportioned to any State under each of sections 104(b)(1), 104(b)(2), 104(b)(5), and 104(b)(5) of this title on the first day of each fiscal year after the second fiscal year beginning after September 30, 1985, in which the purchase or public possession in such State of any alcoholic beverage by a person who is less than twenty-one years of age is lawful.
[3] We note that 23 U.S.C. § 158 does not require states to prohibit the sale of alcoholic beverages to persons under twenty-one. Instead, it only requires states to prohibit the "purchase or public possession" of alcoholic beverages by persons under twenty-one. See supra, note 2. As Louisiana has been receiving its full share of federal highway funds since the effective date of Act 33 of 1986, that Act apparently satisfied the requirements of 23 U.S.C. § 158. There was therefore no need for the State to enact Act 639 of 1995 in order for Louisiana to continue to receive its full share of federal highway funds.
[4] Relevant portions of the 1986, 1991, 1992, and 1993 Louisiana Traffic Records Data Reports, compiled by the Louisiana Highway Safety Commission, were all submitted into evidence in the trial court.
[5] Plaintiffs also introduced the 1991 Louisiana Traffic Data Report, but in that report the state employed a method of data reporting different from that employed in both the 1986 and 1992 reports, dividing persons involved in alcohol related accidents into four year age groups. The change in reporting methodology makes it impossible to compare the rate of accidents involving eighteen to twenty year olds with other three year age groups, since the age group divisions made in the 1991 report, unlike those used in the 1986 or 1992 reports, divide the eighteen to twenty year old age group into two different categories (i.e., ages fifteen to nineteen, twenty to twenty four).
[6] Plaintiffs also introduced an affidavit by Charles Lombardino, stating that he requested and received statistical evidence from the Shreveport and Bossier City, Louisiana Police Departments listing the number of DWI citations issued, by age, in Shreveport in 1994 and in Bossier City from April 11, 1994 through December 31, 1994. While the Shreveport statistics are of no use in the instant case as they are broken down into age groups which split the eighteen to twenty year old age group into different categories, the Bossier City statistics show that there were 22 DWI citations issued to drivers twenty and under, while there were 119 DWI citations issued to drivers twenty-one to thirty years old. Assuming, for comparison purposes, an even distribution of citations among the twenty-one to thirty year olds, every three year age group in that range had an average of 36 DWI citations during the same time period.
[7] "Over-representation," in the context of this opinion, occurs where a particular age group, on a percentage of the total number of licensed drivers basis, accounts for more accidents, on a percentage of total accidents basis, than their percentage number of licensed drivers. For example, see supra at 326, the State maintains that in 1993, eighteen to twenty year old drivers accounted for 5% of the licensed drivers in Louisiana but were involved in 10% of the alcohol related fatal and injury accidents. Therefore, according to the State's evidence, in 1993, eighteen to twenty year olds were "over-represented" in alcohol related fatal and injury accidents in Louisiana.
[8] We note that State's inability to prove its case at this time, due to the circumstances heretofore and presently existing in Louisiana, as revealed by the relevant statistical data introduced by the parties, does not mean that the State is forever precluded from prohibiting eighteen to twenty year olds from purchasing or publicly consuming alcohol. Should eighteen to twenty year olds ever become the age group responsible for the greatest number of alcohol related accidents in Louisiana, the State would then be free to enact an Act containing the very classification rejected herein. In other words, the statistics available at the present time simply do not support the State's presumptively unconstitutional discriminatory classification of eighteen to twenty year olds, but, should the circumstances change, the result obtained herein may well be altered.
[9] See La.C.C. art. 29, stating "Majority is attained upon reaching the age of eighteen years." See also Art. I, Sec. 10 of the Louisiana Constitution of 1974, providing citizens with the right to vote upon reaching the age of eighteen.
[10] Additionally, upon attaining the age of eighteen, persons in Louisiana have the right to: serve in the legislature, Art. 3, Sec. 3, Louisiana Constitution of 1974; witness an execution, La. R.S. 15:570; serve on a Parish School Board, La.R.S. 17:52; serve as a law enforcement officer, La.R.S. 33:1432.1; refuse medical or surgical treatment, La.R.S. 40:1299.56; serve on a jury panel, La.Code Cr.P. art. 401; or get married without parental or judicial consent, La.Ch. Code art. 1545. Upon attaining the age of eighteen, persons in Louisiana can be licensed to work as: a collection agent, La.R.S. 9:3576.9; a school bus driver, La.R.S. 17:160; a notary public, La.R.S. 35:191; an accountant, La.R.S. 37:78; a barber, La.R.S. 37:354; a dental hygenist, La.R.S. 37:764; a funeral director, La.R.S. 37:842; a medication attendant, La.R.S. 37:1025; a real estate agent, La.R.S. 37:1437; a pawnbroker, La.R.S. 37:1787; a stress analyst, La.R.S. 37:2868; an electrologist, La.R.S. 37:3071; an auctioneer, La.R.S. 37:3113; a radiologic technologist, La.R.S. 37:3208; and a respiratory therapist, La.R.S. 37:3354. Attaining the age of eighteen in Louisiana also means such persons: are adults for purposes of custodianship of property, La.R.S. 9:751(1); are no longer protected from dangerous occupations such as work with explosives, in mines, or mills, La.R.S. 23:161; and qualify as an adult for purposes of mental health statutes and regulations, La.R.S. 28:2 and 28:822. Upon attaining the age of eighteen in Louisiana persons have the right to have contact with regulated products considered harmful to children, such that they may: obtain tobacco products, La.R.S. 14:91.6 and 14:91.8; get a tattoo, La.R.S. 14:93.2; purchase a lottery ticket, La.R.S. 47:9070; play video poker machines, La.R.S. 33:4862.19; and purchase firearms, La.R.S. 14:91. Finally, upon attaining the age of eighteen in Louisiana, persons may: hold a permit to sell alcoholic beverages, La.R.S. 26:80(A)(1), and handle alcoholic beverages on the job, La.R.S. 14:93.10(2)(b). This list, though extensive, is by no means exhaustive.
[11] The Twenty-first Amendment, which vests authority for the regulation of the sale and consumption of alcohol in the states, does not in any way alter the proper equal protection analysis. "We thus hold that the operation of the Twenty-first Amendment does not alter the application of equal protection standards that otherwise govern this case." Craig v. Boren, 429 U.S. 190, 209, 97 S.Ct. 451, 463, 50 L.Ed.2d 397 (1976).
[12] Though our holding is based entirely on the record evidence and proper application of the standards enunciated in Sibley and Pace, a simple hypothetical explains why the classification contained in the challenged statutes is unconstitutional. Suppose, in an effort to increase highway safety, the State enacted statutes prohibiting the sale to or purchase by forty to fifty year olds of alcoholic beverages. Would such a law survive a constitutional challenge? We think not, because a decision to discriminate against a class of persons specifically protected by the third sentence of Art. I, Sec. 3, without any factual basis for doing so is inherently arbitrary, capricious, and unreasonable. Our review of the Louisiana Traffic Records Data Reports submitted in this case shows that there is no factual basis for the State to discriminate against forty to fifty year olds by prohibiting them from being sold or purchasing alcoholic beverages. There are no relevant differences in the legal status of eighteen to twenty year olds and forty to fifty year olds. Just as it would be arbitrary, capricious, and unreasonable to single out forty to fifty year olds for such discriminatory treatment where there is no factual basis for doing so, it is arbitrary, capricious, and unreasonable for the State to single out eighteen to twenty year olds for such discriminatory treatment without a factual basis for doing so.
[13] The trial court further found that the State's asserted objective was not implicated by the classification contained in the challenged statutes because La.R.S. 14:93.10(2)(a) contains numerous exceptions allowing persons eighteen to twenty years old to consume and publicly possess alcoholic beverages. However, in light of our decision herein we need not reach this issue.
[14] Though the State's inability to obtain certain federal funds was not raised in State v. Church, 538 So.2d 993 (La.1989), the potential, nevertheless, existed. Under 23 U.S.C. § 410(d), states which employ roadblocks for detection and prevention of intoxicated driving along with other alcohol-impaired driving countermeasures may be eligible for the receipt of federal funds in the form of federal grants. However, this Court declared such roadblocks unconstitutional in Church as violative of Art. I, Sec. 5 of the Louisiana Constitution of 1974, thus limiting the State's ability to secure such funds.
[15] It should be emphasized that the State's receipt of its' full share of federal highway funds under 23 U.S.C. § 158 is conditioned on the State's setting of its' minimum drinking age at twenty-one. As the United States Supreme Court noted in Dole, supra, "the enactment of such laws remains the prerogative of the States not merely in theory but in fact." Dole, 483 U.S. at 211-212, 107 S.Ct. at 2798. Our resolution of the matter herein is entirely dependent upon the fact that the State is free to choose whether to comply with 23 U.S.C. § 158 in order to receive its full share of federal highway funds.
[1] Chief Justice Rehnquist warned of the problems with this approach in his dissenting opinion in Craig v. Boren, 429 U.S. 190, 221-22, 97 S.Ct. 451, 469-70, 50 L.Ed.2d 397 (1976):

How is this Court to divine what objectives are important? How is it to determine whether a particular law is "substantially" related to the achievement of such objective, rather than related in some other way to its achievement? Both of the phrases used are so diaphanous and elasticas to invite subjective judicial preferences or prejudices relating to particular types of legislation, masquerading as judgments whether such legislation is directed at "important" objectives or, whether the relationship to those objectives is "substantial" enough.
[*] Justice E. Joseph Bleich participated in the decision on rehearing, having been elected to fill the vacancy created by the resignation of Justice James L. Dennis. Watson, J., not on panel. Rule IV, Part 2, § 3.
[1] The parties subsequently agreed to convert the preliminary injunction to a permanent injunction, and the trial court's decision was stayed pending this court's decision.
[2] In Sibley, this court held that a legislative classification between medical malpractice victims with slight or medium class injuries, who were entitled to full recovery of damages, and seriously injured medical malpractice victims, who were only entitled to a limited portion of their damages, violated the prohibition of La. Const. art. I, § 3 against arbitrary discrimination based on physical condition.
[3] The first sentence sets forth a general rule against discrimination and empowers the courts to expand the equal protection guarantee to other types of classifications besides those expressly enumerated.
[4] The standards of the federal system, because of the Supremacy Clause, establish the baseline minimum standard of scrutiny. Pace v. State, Through La. State Employees Retirement Sys., 94-1027 (La. 1/17/95), 648 So.2d 1302. Nevertheless, a state may adopt a greater degree of protection of individual rights. In the federal system, the standard for reviewing a statute that discriminates on the basis of age utilizes the minimum standard of scrutiny. See Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). When such a statute is reviewed under the Louisiana Constitution, however, a higher level of scrutiny is applicable and the burden of proof is changed because the framers of the Constitution expressly enumerated in the third sentence of Section 3 a number of classifications that affect significantly important interests that do not reach the level of constitutionally suspect categories.
[5] The phrase "substantially furthers" in the standard for reviewing discriminatory statutes based on age imposes the requirement that the government purpose must be a substantial, as opposed to merely an incidental, reason for the classification. The intermediate standard of scrutiny thus accords less deference to the legislative branch than the rational relationship standard.
[6] "Over-represented" means that a certain age group has more licensed drivers involved in alcohol-related accidents on a percentage basis than the group's respective percentage of total licensed drivers. Illustrating this concept, the majority noted that the State's evidence showed that eighteen to twenty year olds in 1993 accounted for five percent of licensed drivers in this state, yet were involved in ten percent of the alcohol-related fatal and injury accidents. Hence, that age group was "over-represented." 95-2189 (La. 3/8/96), p. 14 n. 7.
[7] As noted, the challenged statutes focus on the problem of youthful drinking and driving. If youthful drinking and driving is a substantial problem in highway safety and if increasing the minimum drinking age is an appropriate means of attacking that problem, the minimum drinking age can only be increased at the lowest levelthe eighteen, nineteen and twenty-year-old group. Thus, the statutes do not single out the members of this three-year age group for unequal treatment as compared to other three-year age groups. This is the only age group that can be affected by a three-year increase in the minimum drinking age.
[8] The trial court's apparent reliance on statistics of DWI arrests in Evangeline Parish was particularly inappropriate. Not only did the statistics not show the percentage of drivers in the disadvantaged group in the parish, but also there was no consideration that young drinking drivers are frequently not arrested for the first incident.
[9] The majority on original hearing went far beyond the Sibley intermediate scrutiny standard and required that the age classification chosen by the Legislature be the one "which most directly implicates or furthers the asserted governmental interest." 95-2189, p. 6. (emphasis added). Sibley has no requirement that the Legislature's choice of means for furthering an appropriate objective be the best choice of several means. This requirement has only been applied in federal strict scrutiny situations involving suspect classes or fundamental rights.
[10] The relationship between a classification and the governmental purpose is sometime referred to as classificatory fit. Classificatory fit is generally analyzed for legislative rationality as a function of underinclusiveness and overinclusiveness of the classification, an approach posited by a seminal article, Joseph Tussman and Jacobus tenBroek, The Equal Protection of the Laws, 37 Cal.L.Rev. 341 (1949).

An underinclusive classification is one that "contains all similarly situated people but excludes some people who are similar to them in terms of the purpose of the law." Ronald D. Rotunda and John E. Nowak, 3 Treatise on Constitutional Law § 18.2 (2d ed. 1992). An overinclusive classification is one that "includes all persons who are similarly situated in terms of the law plus an additional group of persons." Id. Often, as in the present case, classifications are both under and overinclusive. Id.
The age classification at issue here is underinclusive because it does not address a major portion of the perceived problem, adults between twenty-one and thirty. It is overinclusive because it prohibits young adults from drinking even when they would not be driving. South Dakota v. Dole, 483 U.S. 203, 214-15, 107 S.Ct. 2793, 2799-2801, 97 L.Ed.2d 171 (1987) (O'Connor, J., dissenting). The overinclusiveness of the Louisiana minimum drinking age laws at issue, however, is somewhat overcome by the exceptions which permit young adults to drink in specified settings, such as private residences and with parents.
[11] The intermediate scrutiny standard used in Craig to review gender discriminationthe classification must serve important governmental objectives and must be substantially related to achievement of those objectivesis virtually the same as the standard for review of age classification applicable in this case.
[12] While the percentages for males was ten times that for females, the percentages were so small as to be of questionable accuracy, especially in view of the value problems pointed out by the Court for such limited statistics.
[13] See Government Accounting Office, Report to Congress entitled Drinking-Age LawsAn Evaluation Synthesis of Their Impact on Highway Safety (March 1987).
[14] Less restrictive alternatives may be required in cases involving overinclusive classifications. Laurence H. Tribe, American Constitutional Law § 16-4 n. 23 (2d ed. 1988).
[15] The majority on original hearing stated that the age classification undercuts the countervailing governmental interest of according "adult" or "major" status to members of this age group. The majority pointed out many responsibilities and obligations assigned to persons of the age of majority. While these observations are persuasive arguments against legislative adoption of the classification, the function of this court is not to pass on the desirability or wisdom of the Legislature, but to determine the constitutionality of the legislative enactment.
[16] We take judicial notice of the fact the Legislature amended these exceptions after our decision on original hearing, totally repealing the exception for bona fide nonprofit organizations and slightly amending the wording of the remaining four exceptions. See La.Act 1996, No. 78. More precisely, the statutory exceptions, as amended, now read as follows:

(i) For an established religious purpose.
(ii) When a person under twenty-one years of age is accompanied by a parent, spouse, or legal guardian twenty-one years of age or older.
(iii) For medical purposes when purchased as an over the counter medication, or when prescribed or administered by a licensed physician, pharmacist, dentist, nurse, hospital, or medical institution.
(iv) In private residences.
La.Rev.Stat. 14:93.10(2)(a).
[1] For clarity and consistency sake, we depart from proper Bluebook form in this appendix and utilize Roman numbering throughout.
[2] While the State, on rehearing, requested that this court expand the record to include, among other things, additional portions of these data compilations, we decline to do so and decide the case on the record as presented in the trial court.
[3] Plaintiffs also introduced federal statistics from the Federal Bureau of Investigation to establish that the Louisiana arrest statistics were consistent with the federal statistics and that the statistics for alcohol abuse, as measured by nationwide arrests for drunkenness, followed a similar pattern.
[4] "Controlled" was defined as "situations in which proof of legal age was required for the purchase of alcohol (bars, restaurants, spectator events) or where there was a higher likelihood of legal sanctions being imposed because of the greater surveillance of formal social control agents (public areas, motor vehicles)." "Uncontrolled," in contrast, was defined as "situations in which these criteria were absent or at least significantly reduced because of their tendency to be private rather than public locations (residences, dorms). Although informal social control may be present (e.g., parents), the threat of state-backed surveillance and enforcement is minimal (residences, dorms, fraternity and sorority houses, relatives' homes, and private houses)." Linda A. Mooney, Robert Gramling and Craig Forsyth, Legal Drinking Age and Alcohol Consumption, 13 Deviant Behavior: An Interdisciplinary Journal 59, 65 (1992).
[5] See footnote 6 of opinion on rehearing for the definition of "overrepresentation."
[6] The State also introduced affidavits from John Womack and Sharon F. Lyles on the federal funding issue, an issue that we do not reach in our decision on rehearing.
[1] This is confirmed by action of the legislature in addressing this issue again in the First Extraordinary Session of 1996, Act No. 78.
[2] The prohibition of the purchase of alcohol by a person in this age category has been prohibited, generally, since 1986. See Act No. 33, 1st Ex. Sess., 1986. The former set of statutes did not prohibit the sale of alcohol to these persons, and created a contradiction in legislative intent. The legislature "closed the loophole" in the instant Act 639 to prohibit vendors from selling alcohol to the subject age category.
[3] Noteworthy is the fact that Louisiana has delineated other distinctions based on age in the subject category. In the area of gambling, see LSA-R.S. 4:544(B)(1): and 4:660.

LSA-R.S. 4:544(B)(1):
"A person under the age of twenty-one shall not play, or be allowed to play, any licensed gaming device or slot machine, ..."
LSA-R.S. 4:660:
"A. A person under the age of twenty-one shall not:
(1) Play, or be allowed to play, any licensed game or slot machine.
(2) Loiter, or be permitted to loiter, in or about any room, premises, or designated gaming area wherein any licensed game is operated or conducted.
(3) Be employed as a gaming employee.
B. Any casino operator, licensee, or other person who intentionally violates or permits the violation of any of the provisions of this Section and any person under twenty-one years of age who violates any of the provisions of this Section may be punished by imprisonment of up to six months or a fine of up to one thousand dollars, or both.
C. In any prosecution or other proceeding for the violation of any of the provisions of this Section, it shall be a defense that the casino operator, employee, dealer, or other person had a reasonable factual basis to believe and in good faith believed the person was twenty-one years old or over.
D. The casino gaming operator shall withhold all winnings from patrons who are determined to be under the age of twenty-one and shall remit such winnings to the corporation."
[4] The doctrine of separation of powers is sacred. Whether the legislative act is in the area of criminal justice, tort law, taxation or as here, public safety, this court must refrain from invading another branch of government by attempting to substitute its own judgment.
[5] See the Appendix to the original opinion which contains an exhaustive summary of the evidence that appears of record. It is more than abundantly clear that the percentage of accidents among the subject age group due to alcohol was much higher. The proponent of the legislation has clearly met its burden.
[6] The question of potential loss of federal revenues is not of primary concern to this writer. However, this writer's personal judgment cannot be substituted for that of the legislature.

The plaintiff urged in oral argument that there might not be, or would not be, a loss of money and argues that this should not be a consideration. The record indicates to the contrary. The amount of money that might be lost by the state is estimated to be in the range of eighteen million ($18,000,000.00) dollars per year. The state legally has a justification in this regard.
[7] There was mention in oral argument that there might have been other considerations than highway safety and funding; e.g., that the early usage of alcohol would create a "gateway to crime," implying that early use of alcohol would lend itself to a higher incidence of crime in the subject age category. The record makes direct reference to this proposition. See the testimony of Dr. Richard Scribner (R-154) to the effect that alcohol was heavily involved in deaths of those age 18-20, including traffic accidents, homicides and suicides. It would defy logic and common sense to conclude that alcohol consumption in this age category does not significantly contribute to criminal activity other than traffic violations.
[8] See the record, page 152, and the testimony of State Police Commander, Troop A, Ronald B. Jones. "Blood borders" is the term used to describe the situation wherein younger persons in the subject age category from other states drive to Louisiana in order to purchase alcoholic beverages.
[9] Although not argued, there is another important outcome that would result from this legislation designed to promote highway safety, i.e. a reduction in the cost of insurance. The Louisiana automobile policyholder should feel less burden via insurance premium when there is a reduction in accidents in this state.
[10] Indeed, the statutes are attempts to protect the public, both those in and not within the subject age category, from the dangers of excessive and early use of alcohol. It is ironic that the greater problems of dependence on alcohol stem in part from an instability and lethargy that our governments have helped create. The "if it feels good, do it" mentality that pervades our society has been exacerbated by government attempting to please the whim and fancy of its varied constituencies. The reluctance to abide by those great fundamental principles that made this country great, including reliance on family first and government last, have seemed to escape our focus in this country. Indeed, it may well be argued that it is the function of the family unit to address the problems of alcohol and substance abuse. Parenthetically, one of the exceptions in the subject legislation is within the confines of the family home.

However, the subject legislation, even if a substitute for what families should be doing in many instances, is not constitutionally repugnant. To the contrary, as long as there is not an unreasonable or arbitrary basis for this legislation, which this writer finds that there is not, it creates two small stepsone a stride forward to safety, and the other back to the principles that sober, healthy minds are preferred, not condemned. Louisiana is a uniquely beautiful state. Our people have regularly shown their desire to preserve the sanctity of life. Our family values demand such. And although citizens cannot and should not wholly depend on government to preserve their values in each and every instance, the subject legislation is a sensible expression that life will and should be preserved, and that it is appropriate for government to assist in that function.
[1] See 1996 La.Sess.Law Serv., Act No. 100 (West 1996). Of course, by upholding the constitutionality of the statutes at issue herein, this Court has effectively removed the issue from the ballot and pretermitted a decision on the issue by the people of the State of Louisiana, as Section 2 of Act 100 of 1996 states that this issue shall not be submitted to the electors if this Court upholds the validity of the statutes at issue on rehearing.
[2] Though Article II, Section 4 of the Constitution of the State of Montana (the "Individual Dignity" clause) does not list "age" as a protected class, Article II, Section 14 of that Constitution states: "A person 18 years of age or older is an adult for all purposes, except that the legislature or the people by initiative may establish the legal age for purchasing, consuming, or possessing alcoholic beverages." As previously noted, see supra note 1 and accompanying text, the people of this State are, of course, free to amend their Constitution to remove the age classification protection entirely, or to explicitly except protection regarding the purchase, possession or consumption of alcoholic beverages, as has been done in Montana. Whatever their decision, amendment of the Constitution by the people of this State is clearly preferable to alteration of the document by judicial fiat.
[3] Obviously, this Court's analysis of the statutes at issue, as was done in our original opinion using the Sibley and Pace factors, can have no effect on any other particular age classification which exists in Louisiana law. It is elementary that a determination as to the constitutionality of a particular statute or statutes can have no effect on a determination as to the constitutionality of any other statute, as each case is decided (or should be) on the record evidence at issue in that particular case. There is, therefore, no basis in fact for any expressed or implied concern that a determination of unconstitutionality of the statutes at issue herein would automatically lead to a determination that all other statutes which classify persons on the basis of age are unconstitutional.
[1] Applying the same standard of scrutiny, the United States Supreme Court in Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) held, in a case similar to the present case, that the relationship between the gender classification and the goal of traffic safety was far too tenuous to support a conclusion that the classification was substantially related to achievement of the statutory objective. The Court commented that the correlation was "an unduly tenuous `fit.'"