JjSHORTESS, C.J.
The Department of State Civil Service (DSCS), one of the appellees[1] herein, states in the introductory paragraph of its appellate brief:
Effective July 1, 1997 the State Civil Servícé Commission effected a structure adjustment to the existing pay plan for state classified employees. This structure adjustment raised the mínimums of each pay range applicable to state classified employees by 4% and raised the máximums of such pay range by 10%. The reason for doing this was that one-third of all newly recruited and trained employees were leaving within the first year of employment, 39% within the second year, and 27% within the third year. Efforts made by managers to hire and train employees were wasted in ’one-third of the cases. Additionally, another one-third of all employees were stuck at the máximums of their pay range, and 85% of the senior cadre with 20 or more years of state service were at that range maximum. There was neither financial reward nor financial incentive for these employees to show their leadership potential and/or to provide exceptional performance. The people of the' state — the taxpayers — are poorly served by a human resources system in such a state of affairs. The action of the Civil Service Commission in rectifying this problem seems extraordinarily rational, but appellants attack that action.
The appellants, Sandra Gorbaty, et al. (the Gorbaty group),[2] are all employees of New Orleans Adolescent Hospital, which is under the Louisiana Department of Health and Hospitals. The Gorbaty group states in its appellate brief:
In early 1997, effective July 1, 1997, the Civil Service Commission approved the implementation of a “general structure increase” or “pay structure adjustment” to the pay plan and announced, on March 24, 1997 through General Circular no. 1278 that:
“1. Anyone currently below the new range minimum on July 1, 1997 will be brought up to range minimum.
2. Anyone currently at their maximum will again be eligible for a regular 4% merit increase' on their next anniversary date either on or after July 1, 1997. Employees do not receive the 10% all at one time.
3. Employees between minimum and maximum will receive nothing immediately, but will be able to look forward to a higher maximum in the future.
4. There is no retroactive eligibility for missed merit increases for employees at their maximum....”
Further, the range máximums for all 59,000 civil service employees paid under the general schedule increased by 10%.
The record shows that the Civil Service Commission (CSC) effected a structure adjustment to the existing pay plan for state classified employees. The Gorbaty group filed an appeal with the CSC and now seeks review by us.
|4The Gorbaty group lists 13 specifications of error." We will concentrate on its arguments that implementation of the “pay structure adjustment” violated Louisiana Constitution of 1974, Article X, Section 10(A)(1), and that the plan discriminated against the Gorbaty group’s rights to equal protection and due process of law as guaranteed by the United States and Louisiana Constitutions.
*1162 STANDARD OF REVIEW AND . FACTUAL BACKGROUND
The standard of review in civil-service cases is the same as that in any other civil' case. Great weight should be given to factual determinations of the CSC, which should not be reversed or modified unless clearly wrong or manifestly erroneous.[3] Generally, a decision of the CSC will not be overturned by an appellate court unless it is arbitrary, capricious, or an abuse of discretion.[4]
In reviewing the record, we note that the CSC made 17 findings of fact on the merits that can be summarized as follows. The CSC found that the July 1, 1997, pay structure adjustment affected the general pay schedule governing approximately 59,-000 employees. The mínimums of the pay ranges were last raised in 1990, and the máximums were last raised in 1991. By 1996, the CSC noted that “severe recruitment and retention problems had developed at the lower ends of the pay ranges.” According to the CSC, the mínimums were significantly below the market, making it difficult to hire new employees and even more difficult to retain them. Turnover of employees with fewer than two years of state service exceeded 35%, and it fell below 16% only after employees attained five years of state service.
According to the CSC’s factual findings, turnover was not a problem at the upper end of the pay ranges. For employees with 20 years of state service, turnover was virtually nonexistent (only 1.5%). The main problem with senior employees was morale: 34% of all employees paid under the general pay schedule had reached the maximum of their pay ranges and had no economic incentive to perform well. Of the employees with 20 or more years of state service, 85% were in this category.
Pursuant to discussions with the Louisiana governor’s staff, DSCS learned that the governor would not approve a general pay increase for state employees. Accordingly, DSCS proposed a pay structure adjustment raising the mínimums of the pay ranges by | ¡^approximately 4% and the máximums by approximately 10%. On March 24, 1997, by General Circular No. 1278, DSCS announced the pay structure adjustment’s applicable rules. The governor approved the plan in its entirety effective. July 1,1997. By letter dated April 18, 1997, Gorbaty asked DSCS for approval to receive a 10% increase on the plan’s effective date, but the Office of Mental Health did not support the request.
On July 1, 1997, approximately 3,800 employees received immediate pay increases of approximately 4% or less because their rates of pay were below the new mínimums. These employees generally had the least state service. Pay for other employees remained the same. Also on that date, the range máximums for all 59,000 employees paid under the general schedule increased by 10%, giving all employees a higher future earning capacity and enabling the 20,000 employees who were .formerly at their máximums (including six of the eight appellants) to again earn annual merit increases on their anniversary dates of employment.
According to the CSC’s factual findings, the employees in the Gorbaty group seem to have “little in common other than they did not receive an immediate pay increase on July 1, 1997, and their anniversary dates did not arrive soon afterwards.” The CSC further noted that whenever the máximums of the pay ranges are raised without a general pay increase, an employee who was formerly at the maximum can be surpassed in pay by an employee in the same job with less state service who has an earlier anniversary date. However, the *1163 CSC,emphasized that, for employees who were formerly at their máximums, no more than three years of meritorious service is necessary to achieve the enhanced earning capacity provided by the 1997 pay structure adjustment. For employees , who were formerly below their mínimums,, however, 13.5 years of meritorious service is required. The 1997 pay structure adjustment cost $15,000,000, with no additional money being, appropriated. Each state agency absorbed the cost from its existing budget.
In light of its factual findings, the CSC concluded that implementation of the 1997 pay structure adjustment did not imper-missibly discriminate against senior employees and did not violate this court’s 1983 decision rendered in Thoreson v. Department of State Civil Service.[5] Accordingly, it denied the Gorbaty group’s appeals.
The Gorbaty group’s entire cause of action is dependent on its interpretation of Thoreson. We disagree with that interpretation and find .that Thoreson and the Gorbaty Rgroup cases are inapposite. In contrast to this case, Thoreson dealt with partial implementation of a general pay plan in which the plaintiffs would never achieve parity. In Thoreson, Engineering Specialists III with the Department of Transportation and Development (DOTD) challenged the manner in which the 1975 uniform pay plan was applied to their classification in the civil-service system. This court held that the evidence was sufficient to establish that the pay scales of Engineering Specialists III and Engineers III were intended to be identical because they performed the same'work.
The only reason parity was not achieved in Thoreson was due to the unconstitutional manner in which the governor modified the 1975 civil-service pay plan by issuing executive orders on how the plan was to be implemented. Additionally, the CSC’s action in Thoreson allowing some departments to fully implement the pay plan while other departments were unable to do so violated its constitutional trust to establish a uniform classification and pay plan for all civil-service employees.
Unlike the Thoreson plaintiffs, the Gor-baty group will achieve parity, depending only upon meritorious service, ■ which is a goal toward which all employees should be striving. The Gorbaty group’s case is distinguishable from Thoreson in several aspects: each employee in the group can achieve parity based on his own merit; the 1997 plan is a pay structure adjustment rather than a partial implementation of a general pay plan; the governor merely approved the 1997 civil-service plan rather than modifying it; and departments were treated equally.

EQUAL PROTECTION: THORESON VIS-A-VIS GORBATY ANALYSIS

As this court noted in Thoreson, the purpose of civil-service laws is to establish a merit system, rather than a “spoils system,” under which public employees are selected for employment and promotion on the basis of merit rather than as a reward for political service:
“The routine operation of a civil service system by merit selection, compensation regulation, and tenure protection serves to promote efficiency by abolishing useless and unnecessary jobs, maximizing the resources invested in employees by long service, and determining salary and length of service on the basis of benefits rendered to the people rather than to the victorious party.”[6]
(Footnote added.)
Further purposes of the civil-service statutes are to protect career employees from political discrimination and to *1164 guarantee the independent security and welfare of public ^service.[7] These principles havé been deemed so important that detailed provisions on civil service and a merit system have been included in Louisiana Constitution, Article X, Section 7, subject to repeal or amendment only by a vote of the people. The CSC, which has executive, legislative, and judicial powers, must hold a public hearing to consider any pay plans or adjustments, which it did in this case. A pay plan becomes effective only when approved by the governor in its entirety, and he does not have the right to amend or modify the plan, but merely to approve or disapprove it.[8] Unlike Thomson, in which the governor’s actions in modifying the CSC’s 1975 uniform pay plan were unconstitutional, the record reflects that there was no such unconstitutional interference by the governor with the 1997 pay structure adjustment. No executive orders on implementation were issued, and no correspondence of record points to any such actions.
The Gorbaty group argues that the implementation of the pay structure adjustment is an unconstitutional violation of Louisiana Constitution Article X, Section 10(A)(1), governing the CSC’s rule-making powers and requiring it to adopt a uniform pay plan because employees with less seniority are allegedly favored in a discriminatory manner over senior employees. However, that constitutional article states that' another power of the CSC is “to accomplish the objectives and purposes of the merit system.” Accordingly, we find that the constitutional right at issue here is not seniority but the preservation of the merit system to ensure public service free from political favoritism.
After determining' that protection of the merit system is a constitutional right and noting that civil-service rules have the effect of law,[9] the next inquiry is whether the law (the implementation of the 1997 pay structure adjustment) is reasonably related to a legitimate governmental interest rather than an unconstitutional discrimination. Louisiana Constitution Article I, Section 3, sets up a spectrum for analyzing equal protection ■ challenges based on discriminatory classifications:[10]
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations....
Laws classifying persons based on race or religious beliefs are repudiated completely. In the middle of the spectrum are laws that classify persons on the basis of the six grounds ^enumerated in the third sentence of section 3. At the other end of the spectrum are laws that classify persons on any basis other than those expressly enumerated in section 3 that “must pass the minimum standard of being rationally related to a legitimate governmental purpose.” [11] Since the Gorbaty group’s discrimination claim is based on seniority, which is not one of the specifically enumerated classes mentioned in article I, section 3, this court employs the1 minimum standard of scrutiny in deciding whether the 1997 pay structure adjustment is an unconstitutional infringement on senior employees’ rights.
According to the CSC’s factual findings, which this court finds are not clearly *1165 ■wrong, the rationales behind the 1997 pay structure adjustment were two-fold:
1. The mínimums of salary ranges were raised to enhance recruitment and retention of new employees to make state employment more competitive with the private market. Raising the pay minimums also helped to avoid retraining costs created by losing more than 35% of employees with fewer than two years of state service..
2. The máximums of salary ranges were raised to improve the problems of low morale and productivity of senior employees by giving all a higher future earning capacity and enabling those who were at them maximum pay ranges to earn merit increases on their anniversary dates either on or after July 1, 1997.
This court finds that the CSC’s rationales of enhanced recruitment and retention of new employees, as well as improved morale and productivity of senior employees, are rationally related to the legitimate governmental purposes of promoting a merit system for public service and maintaining the integrity of the civil-service system.[12] After a thorough review of the record, we find’no manifest error on the part of the CSC as to its factual findings and further find that its decision was not arbitrary, capricious, or an abuse of discretion. Accordingly, the decision of the Civil Service Commission is affirmed at appellants’ costs.
AFFIRMED.

. The other defendant/appellee is the Louisiana Department of Health and Hospitals, Office of Mental Health, the agency where appellants are directly employed.

. The appellants are: Sandra Gorbaty, Steve McBee, Rebecca Hart, Jacques Rodley Galtier, John T. Harrison, Jr., Catherine J. Kidd, Sarah Morris, and Lena Cross.

. Department of Public Safety & Correcs. v. Thornton, 625 So.2d 713, 715 (La.App. 1st Cir.1993); Marcantel v. Department of Transp. & Dev., 590 So.2d 1253, 1255 (La.App. 1st Cir.1991).

. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/95), 666 So.2d 641, 647.

. 433 So.2d 184 (La.App. 1st Cir.), writ denied, 440 So.2d 726 and 727 (La.1983).

. Id. at 191, quoting New Orleans Firefighters Ass'n v. Civil Service Comm’n, 422 So.2d 402, 410 (La.1982).

. Thoreson, 433 So.2d at 192.

. Id. at 197 and 199.

. Id. at 190, citing Sanders v. Department of Health & Human Resources, 388 So.2d 768, 770 (La.1980).

.Pierce v. Lafourche Parish Council, 99-2854, p. 2 (La.5/16/00), 762 So.2d 608 citing Manuel v. State, 95-2189, p. 4-5 (La.3/8/96), 692 So.2d 320, 339.

.Id.

. Furthermore, we note that the total compensation package for state employees like those in the Gorbaty group involves more than mere salary. Senior employees are eligible or will be in the near future for the Deferred Retirement Option Plan (DROP), which improves morale and productivity. Newer employees do not have this attractive option until they have much more state service.